**Mary J. MATTSON, Petitioner,**

v.

**DEPARTMENT OF the TREASURY, Respondent.**

No. 95–3582.

United States Court of Appeals, Federal Circuit.

June 12, 1996.

Rehearing Denied Aug. 9, 1996.

---

Joseph M. Gontram, Ruch & Gontram of Philadelphia, Pennsylvania, argued, for petitioner.

Deborah A. Bynum, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., argued, for respondent. With her on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Joseph A. Kijewski, Assistant Director.

Before LOURIE, Circuit Judge, SKELTON, Senior Circuit Judge, and SCHALL, Circuit Judge.

SKELTON, Senior Circuit Judge.

Petitioner Mary J. Mattson (Mattson) seeks review of a final decision of the Merit Systems Protection Board (MSPB or board) which affirmed a decision of the Department of the Treasury (the agency), Internal Revenue Service (IRS), which demoted her from the position of Investigative Support Supervisor, GS-11, to the position of PAS Analyst, GS-9, effective November 13, 1994, on a charge by the agency that she had allowed a subordinate employee, Veronica Dougherty (Dougherty), to use the Integrated Data Retrieval System (IDRS) to access the income tax account of her daughter Ann B. Gordon for other than official business. The agency originally removed Mattson from the service, but this penalty was reduced to the demotion stated above by Joseph Cloonan, Director, Philadelphia Service Center after he considered all of the mitigating circumstances. Mattson appealed to the board which affirmed the demotion decision after a hearing before an Administrative Judge (AJ) of the board. She has now appealed the board's decision to this court. We reverse.

## BACKGROUND

The facts show that Mattson had been a government employee for over 21 years with an unblemished record of service. At the time the charge was filed against her she worked for the criminal investigative support section of the IRS. Her duties required her to review tax returns of taxpayers by the use of IDRS for such things as intentional fraud, fraudulent tax returns and preparers and those who "blow the whistle" on other taxpayers. The IDRS was the data base for the agency's computer system. Employees, including Mattson and Dougherty, had to be specially profiled (cleared for access) before they could use the system. IRS rule SC–MA–Memorandum No. 1(16)–20, Revised February 26, 1990. Each employee who was profiled was issued a password in a sealed envelope which provided access to IDRS tax information. Section 4 of the rule required the password to be kept confidential and not shared with anyone. It was required to be memorized by the employee and then destroyed. This password had to be used on the computer by an employee before access to information on a tax return could be obtained. As a part of the profile process, employees were cleared to receive only information within their job description, and whenever an employee entered the IDRS, an audit trail was created. Sections 4.02 and 4.04 of the above rule are a part of this profile process. They provide as follows:

4.02 Employees are prohibited from accessing their own accounts, spouse's accounts, or accounts of any relative.

4.04 Employees may only access accounts within the scope of their official duties. Access of accounts of friends, celebrities, prominent or well-known taxpayers is strictly prohibited. Employees working cases on celebrities and well-known taxpayers should advise their manager immediately if IDRS access is made.

Mattson had been profiled in accordance with the above rule and was cleared to access income tax returns in search of such things as intentional fraud in tax returns and fraudulent tax preparers. She accessed as many as 3300 tax returns per month in the performance of her official duties. She was especially interested in searching for fraudulent tax preparers because she had participated in the prosecution of one Robert Graham for preparing false tax returns. He was convicted and given a five-year prison sentence. Mattson was always interested in reviewing any tax return prepared by Graham. This interest is relevant to Mattson's defense to the charge against her in the instant case, as shown below.

Pertinent parts of the IRS rule quoted above provide that an employee may not access the account of a relative and may only access an account that is within the scope of his or her official duties. To obtain a tax return, an investigator punches into the computer the social security number of the taxpayer whose return is sought and also the secret password of the investigator and the REINF command code which provides research of the IDRS. When all of this information is put into the computer the operator is able to see a document locator number and then get a printout of a "transcript of the account" relating to the taxpayer in question. From this information, the tax return itself can be ordered.

The evidence produced before the board showed that before any charge was filed against Mattson the agency was investigating several other employees who had used the command code REINF, which provides research of the IDRS Refund File, and found that Veronica Dougherty was one of those who had used the code. Dougherty was interviewed by an inspector of the agency, and she revealed to him that over a four-year period beginning in 1990 she had accessed the tax return of her son-in-law Vernon Gordon 96 times trying to find out if he had filed a fraudulent joint tax return for himself and his wife Ann Gordon, who was Dougherty's daughter. The Gordons were separated. Dougherty had been told by a third party that Vernon Gordon had forged Ann Gordon's name on the return and had gotten a refund check and forged her name on it when it was cashed. During the interview she also told the inspector that she had accessed her daughter's tax return five times. Dougherty's manager and supervisor Mattson had no knowledge that Dougherty had accessed the tax returns of her daughter and son-in-law. However, during the interview with the agency's inspector, Dougherty said that Mattson had given a one-time permission to her to access her daughter's tax return.

As a result of the interview with Dougherty, the inspector interviewed Mattson, who acknowledged that Dougherty had advised her that her son-in-law had forged an income tax return which generated a tax refund that Dougherty's daughter was not aware of, and that she needed to obtain her daughter's tax return. According to Mattson, Dougherty also said that her son-in-law's tax return had been prepared by the known tax protester Robert Graham.

When the results of the interviews between the inspector and Dougherty and Mattson were given to Mattson's superior, Patricia Betlejewski, it appeared to her that Mattson had given permission for an unofficial use of the command code. She then proposed Mattson's removal and filed the following charge against her:

*Reason:* You allowed a subordinate employee to use IDRS for other than official business.

> *Specification:* Your subordinate employee asked you for permission to access the tax account of her daughter on IDRS. The employee told you that her daughter needed the tax information for legal action concerning divorce proceedings. You gave the employee permission to access her daughter's account.

The agency had the burden of proof to sustain this charge by proving by a preponderance of the evidence that Mattson "allowed" Dougherty to use IDRS for other than official business by giving Dougherty permission to access her daughter's account. *Burroughs v. Dept. of the Army*, 918 F.2d 170 (Fed.Cir.1990).

Mattson was the only person that testified at the board hearing who had personal knowledge of the incident that formed the basis for the charge. However, the agency's counsel David J. Markman wrote a letter dated December 15, 1995, to the board's AJ asking that Dougherty be subpoenaed to testify as a witness. He stated in the letter which is in the record that "if we are unable to obtain Mrs. Dougherty as a witness, we will be unable to prove our allegations". Mrs. Dougherty was in a nursing home and paralyzed. She did not testify at the hearing.

Mattson testified that she had been involved with the investigation and prosecution of Robert Graham for preparing fraudulent tax returns, and that it was a common practice to pull (access) tax returns prepared by a tax protester. She said that on the occasion in question Dougherty came to her and asked for permission to access the tax return of her daughter Ann Gordon. She told Mattson that her son-in-law Vernon Gordon had filed a fraudulent joint tax return for himself and his wife Ann Gordon and had forged his wife's name on the return and had gotten a refund check and forged his wife's name on it. Dougherty also told Mattson that the tax return had been prepared by Robert Graham. When Mattson learned of the connection of Graham with the return, she became interested in seeing it. Because of the possible fraud in the return and the allegation that Graham had prepared it, she concluded that the return should be examined and decided to obtain it. Mattson went to Dougherty, sat behind her, and told her to enter her daughter's Social Security number into the IDRS. Mattson knew from her profile training and other instruction that the rules prohibited Dougherty from accessing the return of a relative, so on this occasion she, not Dougherty, did the accessing of Ann Gordon's tax return. Dougherty punched the requested numbers into the computer, but did nothing further. After Dougherty furnished Mattson her daughter's social security numbers by punching them into the computer, Mattson punched into the computer her secret password number and the REINF command code and later retrieved (or pulled) the return. It is undisputed that Dougherty did not see or read the return and did not get any information from it.

After Mattson had obtained the return, she called John Bell, the case agent who had prosecuted Graham, and asked him if he would be interested in the return, and he said no. Mattson then filled out form No. 3949 and forwarded it and the return to the return branch for an examination, as Mattson was not an examiner. She had nothing further to do with the return.

In sustaining the charge against Mattson, the AJ stated as follows:

> The appellant's assertion that she had the tax return pulled for an official purpose is not supported by the record. There is no dispute that the agency has a rule against using the command code to pull the tax return of a relative. At the time the appellant allowed Ms. Dougherty to access the daughter's tax return, she clearly knew that Ms. Dougherty was using the IDRS to access the tax return of a relative.... Had appellant simply taken the information from Ms. Dougherty and allowed another employee to use IDRS to access the returns, or, had she accessed the return in her capacity as a supervisor, there probably would have been no violation of the rules. However, I find that the fact that she gave permission to Ms. Dougherty to access the return of a relative ... made the use an unofficial use.

## DISCUSSION

We must uphold the board's findings unless they are

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) obtained without procedures required by law, rule, or regulation having been followed; or

(3) unsupported by substantial evidence.

5 U.S.C. § 7703(c) (1994).

On appeal, Mattson contends, as she did throughout the board proceedings, that she has not violated any rule of the agency, and that in having Dougherty enter into the IDRS a request for the document locator number that would enable one to gain access to the tax return of Ann Gordon she was only doing her job, and that the accessing of the return was for the official purpose of researching an allegedly fraudulent tax return. In short, Mattson argues that the decision of the board sustaining her demotion is not supported by substantial evidence. We agree.

The agency charged Mattson with having "allowed a subordinate employee to use IDRS for other than official business," by giving the employee "permission to access her daughter's account." As seen above, the AJ stated that Mattson's assertion that she had Ann Gordon's tax return pulled for an official purpose was not supported by the record. Later in her decision, however, when addressing the penalty issue, the AJ stated: "[Mattson's] motives appear to have been pure, that is, she was motivated solely by the desire to bring a possible fraudulent tax return to the agency's attention." Thus, the AJ made two squarely contradictory findings as to the purpose Mattson had in mind when she directed Dougherty to enter her daughter's social security number into the IDRS. Under these circumstances, we conclude that the agency failed to prove the "other than official business" element of the charge.

For the foregoing reason, we hold that the agency has not carried its burden by proving by a preponderance of the evidence the charge against Mattson. The decision of the board was not supported by substantial evidence as defined in *Consolidated Edison Co. v. National Labor Relations Board,* 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938) and *Brewer v. United States Postal Svc.,* 227 Ct.Cl. 276, 647 F.2d 1093 (1981), *cert. denied,* 454 U.S. 1144, 102 S.Ct. 1005, 71 L.Ed.2d 296 (1982), and was arbitrary, capricious and an abuse of discretion. Under these circumstances, we are authorized by 5 U.S.C. § 7703(c) to overturn the decision of the board. Accordingly, we reverse the board's decision, and the case is remanded with instructions to restore Mattson to her former position with back pay and other benefits to which she is entitled.

REVERSED AND REMANDED

Mattson to recover her costs.