**Rokki Knee CARR, Petitioner,**

v.

**SOCIAL SECURITY ADMINISTRATION,\* Respondent.**

**No. 98–3244.**

United States Court of Appeals, Federal Circuit.

July 30, 1999.

\* The action before the Merit Systems Protection Board was brought by the Department of Health and Human Services. During the pendency of that action the Social Security Administration became an independent agency in the executive branch of the United States Government, effective March 31, 1995. *See* Social Security Independence and Program Improvements Act of 1994, Pub.L. 103–296, § 101, 108 Stat. 1464, 1465 (1994). The caption of this case has been modified to reflect that change.

Robert D. Luskin, Comey, Boyd & Luskin, of Washington, DC, argued for the petitioner.

Lee J. Freedman, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for the respondent. On the brief were David M. Cohen, Director, Kathryn A. Bleecker, Assistant Director, and Joel McElvain, Attorney.

Before PLAGER, SCHALL, and BRYSON, Circuit Judges.

SCHALL, Circuit Judge.

Rokki Knee Carr petitions for review of the final decision of the Merit Systems Protection Board ("Board") authorizing the Social Security Administration ("SSA" or "agency") to remove her from her position as an administrative law judge ("ALJ"). *Social Security Administration v. Carr*, 78 M.S.P.R. 313 (1998). We affirm.

## BACKGROUND

### I.

Ms. Carr began work as an ALJ in 1990 in the SSA's Albuquerque, New Mexico hearing office. In 1991, the agency transferred her to its hearing office in New Haven, Connecticut. Shortly after she began working in New Haven, Ms. Carr discovered conduct that she believed constituted gross mismanagement. She also discovered what she believed were violations of various statutes, rules, and regulations. She disclosed her discoveries to appropriate authorities within SSA. Her disclosures related in part to the staff at the New Haven office.

In the meantime, Ms. Carr was the subject of disciplinary action. On April 22, 1992, she received a letter of counseling for intimidation of, and insensitivity towards, subordinate staff members. Thereafter, on July 19, 1993, she was reprimanded for disruptive behavior and inappropriate conduct. Eventually, after a number of other incidents, SSA decided that Ms. Carr should be removed from her position. Since she was an ALJ, however, this action could not be taken until SSA obtained authorization from the Board. *See* 5 U.S.C. § 7521 (1994) ("An action may be taken against an administrative law judge ... by the agency in which the administrative law judge is employed only for good cause established and determined

by the [Board] on the record after opportunity for hearing before the Board."). Accordingly, on June 20, 1994, SSA filed a complaint with the Board seeking authorization to remove Ms. Carr from her position as an ALJ, based on six charges supported by twenty-eight specifications.

In accordance with regulations then in effect and following a hearing, the presiding administrative law judge, who in this case was the Board's Chief Administrative Law Judge ("CALJ"), issued a recommended decision. *See* 5 C.F.R. § 1201.135(a) (1996) ("[A]n action by an employing agency against an administrative law judge will be heard by an administrative law judge, who will issue a recommended decision....").[1] The CALJ sustained four of the six charges and fifteen of the twenty-eight specifications (sustaining six of the specifications only in part). Based on his findings, he recommended that the Board authorize SSA to remove Ms. Carr from her position. *See* 5 C.F.R. § 1201.136 (1996) (requiring the Board to authorize disciplinary action and the penalty to be imposed after it has made a finding of good cause shown).

The Board adopted the CALJ's recommended decision and authorized SSA to remove Ms. Carr from her position as an ALJ. *See Carr*, 78 M.S.P.R. at 318. The four charges against Ms. Carr that were sustained by both the CALJ and the Board were (1) reckless disregard for personal safety (one specification sustained in part), (2) persistent use of vulgar and profane language (seven specifications), (3) demeaning comments, sexual harassment and ridicule (three specifications, one of which was in part sustained), and (4) interference with efficient and effective agency operations (one specification). *See id.* at 330.

This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) (1994).

## DISCUSSION

The scope of our review of a decision of the Board is limited. We must affirm the decision unless we find it to be "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence...." 5 U.S.C. § 7703(c) (1994); *Gibson v. Department of Veterans Affairs*, 160 F.3d 722, 725 (Fed.Cir.1998).

## I.

 Before the Board, SSA had the burden of establishing the charges against Ms. Carr by a preponderance of the evidence. *See* 5 U.S.C. § 7701(c)(1)(B) (1994); *Mattson v. Department of the Treasury*, 86 F.3d 211, 214 (Fed.Cir.1996). On appeal, Ms. Carr does not challenge the findings of the Board that she persistently used vulgar and profane language, that she made demeaning comments and engaged in sexual harassment and ridicule, and that, by her conduct, she interfered with efficient and effective agency operations. Her sole challenge to the sufficiency of the evidence relates to the charge that she acted with reckless disregard for personal safety.

The Board sustained the charge of reckless disregard for personal safety because it found that Ms. Carr knew that Ms. Harris–Gonzales, a hearing office manager, was standing in Ms. Carr's office doorway when Ms. Carr closed the door with force, causing the door to hit and injure Ms. Harris–Gonzales. *See Carr*, 78 M.S.P.R. at 321–23. Ms. Carr contends,

---

1. Effective September 16, 1997, the Board amended its regulations so that, in cases involving proposed actions against administrative law judges, the presiding administrative law judge will issue an initial decision instead of a recommended decision. *See* 62 Fed.Reg. 48,455 (1997); 5 C.F.R. § 1201.140(a)(2) (1998). Thereafter, if either party is dissatisfied with the initial decision, it may petition the Board for review. *See* 5 C.F.R. §§ 1201.140(a)(2), 1201.114(a) (1999).

however, that the finding that she shut her office door knowing that Ms. Harris–Gonzales was standing in the doorway is insufficient, as a matter of law, to support a finding that she acted with reckless disregard for personal safety. The contention is without merit. We have no difficulty agreeing with the Board that when Ms. Carr shut her office door with sufficient force to cause injury, knowing that Ms. Harris–Gonzales was standing in the doorway, she acted with reckless disregard for personal safety. Recognizing that SSA proved by a preponderance of the evidence four of the charges against Ms. Carr, we turn to the remaining arguments that are raised on appeal.

## II.

### A.

■ Ms. Carr's main argument on appeal relates to an affirmative defense that she asserted before the Board. In response to the agency's petition to remove her, Ms. Carr raised the affirmative defense that the removal action was being taken against her in retaliation for her whistleblowing activities, in violation of the Whistleblower Protection Act of 1989, Pub.L. No. 101–12, 103 Stat. 16 (codified at various sections of 5 U.S.C.) ("WPA"). The WPA prohibits a personnel action [2] with respect to an employee because of "any disclosure of information by [such] employee ... which the employee ... reasonably believes evidences—(i) a violation of any law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety...." 5 U.S.C. § 2302(b)(8) (1994). Under the statute, after an employee establishes by a preponderance of the evidence, *Ellison v. Merit Sys. Protection Bd.*, 7 F.3d 1031, 1034 (Fed.Cir.1993), that she made a protected disclosure, that sub-

sequent to the disclosure she was subject to disciplinary action, and that the disclosure was a contributing factor to the personnel action taken against her, the agency must prove by clear and convincing evidence that it would have taken the same personnel action in the absence of the protected disclosure. *See* 5 U.S.C. § 1221(e) (1994); *Kewley v. Department of Health and Human Services*, 153 F.3d 1357,1364 (Fed.Cir.1998).

The Board found, and the parties do not dispute, that Ms. Carr made protected disclosures, that she was subject to discipline after making the disclosures, and that the disclosures were a contributing factor in the disciplinary action against her. Therefore, in relation to Ms. Carr's affirmative defense, the only issue that remained before the Board was whether SSA could establish by clear and convincing evidence that it would have sought authority to remove Ms. Carr in the absence of her protected disclosures.

Turning to the pertinent facts, the decision to petition the Board for authority to remove Ms. Carr was made by SSA Associate Commissioner Daniel Skoler. Associate Commissioner Skoler petitioned the Board on behalf of SSA after receiving recommendations to remove Ms. Carr from Judge David Allard, Regional Chief ALJ, and Judge Robert A. Pulcini, Hearing Office Chief ALJ for the New Haven office and Ms. Carr's supervisor. Judge Pulcini received complaints from employees of the New Haven office regarding Ms. Carr, and relayed those complaints to Judge Allard and Associate Commissioner Skoler.

Both Judge Pulcini and the employees of the New Haven Office had motives to retaliate against Ms. Carr. Judge Pulcini, as Hearing Office Chief ALJ, had responsibility for management of the New Haven

---

**2.** The term "personnel action" is defined in 5 U.S.C. § 2302(a)(2)(A)(iii) (1994) as including "an action under chapter 75 of [Title 5 (Adverse Actions)]." Chapter 75 includes re-

moval actions. 5 U.S.C. § 7512 (1994). The term "personnel action" thus encompasses the action to remove Ms. Carr.

office. Ms. Carr's protected disclosures related to the management of the office, and constituted criticisms of Judge Pulcini's performance. Indeed, Judge Pulcini eventually was removed from the position of Hearing Office Chief ALJ. Judge Pulcini plainly had a motive to retaliate against Ms. Carr. The employees of the New Haven office also were motivated to retaliate against Ms. Carr, as Ms. Carr's complaints in part related to their conduct.

The Board concluded that SSA had established by clear and convincing evidence that it would have petitioned for authority to remove Ms. Carr even in the absence of her protected disclosures. The Board determined that "[Judge] Pulcini's influence over the decisionmaker, [Associate Commissioner] Skoler, was limited and thus ... the motive to retaliate ... did not weigh heavily in favor of finding reprisal." *Carr*, 78 M.S.P.R. at 336. First, in his recommended decision, which the Board adopted, the CALJ found that Ms. Carr's protected disclosures did not appear to relate to any wrongdoing on Associate Commissioner Skoler's part, and that therefore there was no indication that Associate Commissioner Skoler had any motive to retaliate against Ms. Carr. The CALJ also found that Judge Allard was not the subject of Ms. Carr's allegations of wrongdoing. Lastly, he pointed to various other indications that Judge Pulcini's influence on the removal decision was limited:

> While Judge Pulcini testified that he had recommended [removal] in August or September 1993, he indicated in doing so ... that he had provided the same advice several months earlier obviously without success. Moreover, he testified without contradiction that, as [Hearing Office Chief ALJ], he "had no direct authority over" administrative law judges in his office, and that he could only report problems such as those he experienced with [Ms. Carr] to his superiors. In addition, when asked whether he was "given an answer as to what was going to be done" in response to his

requests for action with respect to [Ms. Carr], he testified that he was not given this information, and he added, "That was part of my problem. I was not being informed." Finally, [Judge Pulcini's removal as Hearing Office Chief ALJ] shortly after [Ms. Carr's] removal was proposed ... suggests that the Associate Commissioner and others advising him may have viewed Judge Pulcini's complaints and requests with some skepticism, and that they may [have] concluded that they needed to base their decisions regarding [Ms. Carr] on more independent sources of information.

(citations to the record omitted).

### B.

■ The Board has held that, when determining whether an agency has shown by clear and convincing evidence that it would have taken the same personnel action in the absence of whistleblowing, it will consider the following factors: the strength of the agency's evidence in support of its personnel action; the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *See Geyer v. Department of Justice*, 70 M.S.P.R. 682, 688 (1996), *aff'd*, 116 F.3d 1497 (Fed.Cir.1997) (Table). We believe that *Geyer* sets forth an appropriate test for determining whether, in a given case, an agency has carried its burden of establishing by clear and convincing evidence that it would have taken the personnel action at issue in the absence of the disciplined employee's protected disclosure(s).

■ Except for the one point discussed in Part I above, Ms. Carr does not contest the overwhelming strength of the evidence that SSA presented in support of its petition for authority to remove her from her position. Instead, she directs our attention to the second and third parts of the

*Geyer* test. She focuses first on the question of the strength of any motive to retaliate on the part of the agency officials who were involved in the decision to remove her. In that regard, she does not challenge the Board's finding that Associate Commissioner Skoler and Judge Allard were not influenced by improper motives on the part of Judge Pulcini. Rather, she argues that the Board failed to consider the extent to which Judge Skoler and Judge Allard were influenced by the complaints made against her in the New Haven hearing office by individuals who had been the subject of her whistleblowing disclosures concerning alleged time and attendance abuses, gross mismanagement, and poor job performance. Ms. Carr presents her argument as follows:

> In proceedings before the CALJ, Judge Carr presented substantial evidence that employees in the New Haven Hearing Office retaliated against her because of her protected disclosures, resulting in the charges which led to the removal proceeding.... The Board dismissed all of this evidence because it concluded that "the support staff had no authority to recommend a personnel action." (citation omitted). This position ignores this Court's holding in *Marano v. Department of Justice*, 2 F.3d 1137 (Fed.Cir.1993), which made it clear that it is not the issue of retaliatory motive which must be considered, but rather the issue of whether protected disclosures were a factor which led to the adverse employment action taken....

In *Russell v. Department of Justice*, 76 M.S.P.R. 317 (1997), the Board found that the agency had failed [to] produce clear and convincing evidence that it would have taken the same action even in the absence of protected disclosures. In *Russell*, investigations of the employee were initiated by the agency because of allegations made by two of the subjects of his protected disclosure. 76 M.S.P.R. at 323. In finding against the agency on these facts, the Board held:

> The record evidence shows that ... both [individuals] had a strong motive to retaliate. They were both subjects of the Appellant's protected disclosure, they were the subjects of an ... investigation due to the Appellant's protected disclosure when they made their reports about the incidents that formed the basis of the charged misconduct.

76 M.S.P.R. at 326.

Thus, Ms. Carr argues that the Board should have denied SSA's petition for authority to remove her because the indisputably improper conduct in which she engaged—and for which SSA sought her removal—would not have come to the attention of Associate Commissioner Skoler and Judge Allard but for her protected disclosures. In other words, Ms. Carr asserts that the staff of the New Haven office would not have complained about her behavior and SSA would not have sought to remove her if she had not disclosed the staff's misconduct. For the following reasons, we reject this argument.

Ms. Carr's reliance on *Marano* is misplaced. Marano was employed as a criminal investigator in the Albany, New York office of the Drug Enforcement Administration ("DEA"). *See Marano v. Department of Justice*, 2 F.3d 1137, 1138 (Fed. Cir.1993). Marano submitted a memorandum to the incoming manager of the DEA's New York Field Division alleging misconduct on the part of the Albany office's supervisory agents. *See id.* The memorandum, which was indisputably a protected disclosure, prompted an investigation which lead to a "major overhaul" of the Albany office. *Id.* at 1138–39. As part of the overhaul, Marano was transferred to DEA's New York City office. *See id.* Marano's transfer did not result from any wrongdoing on his part. Rather, the Acting Deputy Administrator of DEA determined that "correction of the situation in Albany would require reassigning Marano in order to affect a 'clean sweep' of office leadership and avoid any potential

obstacles for the incoming supervisor." *Id.* at 1139.

Marano contended that his reassignment amounted to a prohibited personnel action taken in retaliation for his protected disclosure. *See id.* He brought an individual right of action with the Board after the Office of Special Counsel denied his request for corrective action. *See id.* The Board denied the appeal. It held that Marano had failed to establish that his disclosure was a contributing factor to his subsequent personnel action because the transfer was due to the investigation that resulted from his whistleblowing disclosure, and not due to the fact that he made the disclosure. *See id.* at 1139. On appeal this court reversed, stating that Marano's disclosure was intertwined with the subsequent investigation and that therefore the content of the disclosure was a contributing factor to Marano's reassignment. *See id.* at 1143. We remanded the case to the Board to allow the agency to attempt to establish that the Albany to New York City transfer would have taken place in the absence of Marano's disclosure. *See id.*

*Marano* differs from the present case. The issue in *Marano* was whether Marano's protected disclosure was a contributing factor in his transfer, not whether the agency had met its burden of showing that the transfer would have taken place in the absence of the disclosure. *See id.* at 1141. Ms. Carr confuses the issue of whether her protected disclosures were a contributory factor in the action to remove her—a point that is undisputed—with the issue of whether SSA established by clear and convincing evidence that it would have sought to remove her in the absence of those disclosures.

*Russell* is more like this case. There, an employee of the Department of Justice's ("DOJ's") Bureau of Prisons ("BOP") in Florence, Colorado, was demoted from the position of disciplinary hearing officer to the position of warranty coordinator. *Russell v. Department of Justice*, 76 M.S.P.R. 317, 320–21 (1997). Prior to the demotion, Russell submitted a memorandum to BOP's Regional Director asserting that Tom L. Wooten, warden of the Florence facility, and Darwin L. Campbell Jr., the Regional Discipline Hearing Administrator, had improperly interfered with his adjudication of inmate misconduct. *See Id.* at 321. Following this protected disclosure, Russell was the subject of investigations by DOJ's Office of Internal Affairs ("OIA"), based on allegations by Warden Wooten. *See Id.* at 327. The charges which formed the bases for the demotion action resulted from OIA's investigations and from certain additional allegations made by Regional Discipline Hearing Administrator Campbell. As an affirmative defense to the demotion action, Russell contended that but for the allegations made by the subjects of his protected disclosure, the deciding official (the Regional Director) would not have been presented with the conduct that resulted in his demotion. *See Id.* at 323. The Board agreed and stated:

> [B]ut for the allegations made by the subjects of the protected disclosure, Regional Director Kane would not have been presented with the incidents in question. Thus, we find that the protected disclosure was a contributing factor in the personnel action. When such a showing is made, the Board will order corrective action unless the agency can demonstrate by clear and convincing evidence that it would have taken the same personnel action absent the protected disclosure.

*Id.* at 323.

Observing that the WPA shields an employee "only to the extent the record supports a finding that he would not have been disciplined except for his status as a whistleblower," *id.* at 325, the Board turned to the *Geyer* factors to determine whether BOP had established by clear and convincing evidence that it would have demoted Russell in the absence of his protected disclosure. The Board found that

when Wooten made his allegations to OIA, he had "strong evidence" of Russell's misconduct and that when Campbell reported Russell's misconduct to Regional Director Kane, he had "clear evidence" to support his accusation. *Id.* at 326. It also found, however, that both Wooten and Campbell had strong motives to retaliate against Russell. *See id.* Finally, the Board determined that BOP had failed to produce any evidence to establish that it took similar actions against similarly situated employees who were not whistleblowers. *See id.* Weighing the *Geyer* factors, the Board concluded that the evidence of Russell's misconduct was far outweighed by the presence of retaliatory motive and the absence of any evidence that BOP treated similarly situated employees the same way it treated Russell. *See id.* Accordingly, the Board ordered that corrective action be taken. *See id.*

In *Geyer*, the Board stated that it is "the existence of any motive to retaliate on the part of the *agency officials* who were involved in the decision [to take disciplinary action]" that is to be considered. *Geyer*, 70 M.S.P.R. at 687 (emphasis added). Wooten and Campbell were agency officials. The critical difference between this case and *Russell* is that the individuals who made up the support staff of the New Haven hearing office and who complained about Ms. Carr were not "agency officials" recommending discipline. They were line employees who witnessed, and were affected by, Ms. Carr's conduct.

■ "The purpose of the Whistleblower Protection Act is to encourage disclosure of wrongdoing to persons who may be in a position to act to remedy it...." *Horton v. Department of the Navy*, 66 F.3d 279, 282 (Fed.Cir.1995). Whistleblowers are encouraged to make such disclosures by providing protection against retaliation for making the disclosures. *See Spruill v. Merit Sys. Protection Bd.*, 978 F.2d 679, 690 (Fed.Cir.1992). However, as the Board itself noted in *Russell*, the WPA is not meant to protect employees from

their own misconduct. *See Watson v. Department of Justice*, 64 F.3d 1524, 1527 n. 3 (Fed.Cir.1995) (citing cases for the proposition that whistleblowing does not shield employees who engage in wrongful conduct because they have blown the whistle); *Marano*, 2 F.3d at 1142 n. 5 (citing to legislative history of the WPA for the proposition that the WPA is not intended to shield employees who engage in misconduct from discipline). For that reason, we decline to hold that, in considering the second *Geyer* factor, the Board erred in not taking into account the extent to which the "support staff" employees in New Haven about whom Ms. Carr made protected disclosures were motivated to retaliate against her and therefore influenced the actions of Associate Commissioner Skoler and Judge Allard. To so hold, would, in our view, improperly shield Ms. Carr from the consequences of her misconduct, simply because, although Messrs. Skoler and Allard were not motivated to retaliate, they acted on information that came to them from "support staff" employees who were. We decline to read the WPA as requiring such a result.

■ Turning to the third *Geyer* factor, Ms. Carr argues that the Board erred in its analysis because it failed to take into account the fact that SSA failed to take disciplinary action against similarly situated individuals who were not whistleblowers. Specifically, Ms. Carr contends that Judge Pulcini was abusive towards her and that other ALJs in the New Haven office used vulgar and offensive language, and that they were not disciplined. Ms. Carr also contends that there were employees in the New Haven office who were rude and disrespectful, and that they were not disciplined as well.

■ For an employee to be considered similarly situated to an individual who is disciplined, it must be shown that the conduct and the circumstances surrounding the conduct of the comparison employee are similar to those of the disciplined indi-

vidual. *See Thomas v. Department of Defense*, 66 M.S.P.R. 546, 549–52 (1995), *aff'd*, 64 F.3d 677 (Fed.Cir.1995) (Table). The Board found that Judge Pulcini mistreated Ms. Carr by screaming at her and allowing other employees to use vulgar language, but that he did not abuse support personnel, individuals in other agency offices, and supervisory ALJs, as Ms. Carr did. *See Carr*, 78 M.S.P.R. at 337. The Board therefore held that Judge Pulcini was not similarly situated to Ms. Carr because he did not engage in the same kind of misconduct. *See id.* Substantial evidence supports this determination.

 Substantial evidence also supports the Board's determination that the "support staff" employees of the New Haven hearing office were not similarly situated to Ms. Carr. Significantly, those employees and the ALJs were supervised under separate chains of command. *See Carr*, 78 M.S.P.R. at 337; *Carroll v. Department of Health and Human Services*, 703 F.2d 1388, 1391 (Fed.Cir.1983) (holding that the Board was not in error in finding that postal employees that worked in different modules under different supervisors were not similarly situated). More importantly, as an ALJ, Ms. Carr held a position of trust and responsibility that was entirely different from the positions of the employees who made complaints about her.

In sum, for the foregoing reasons, the Board did not err in holding that SSA established by clear and convincing evidence that it would have sought authority to remove Ms. Carr in the absence of her protected disclosures.

### III.

 Finally, we turn to two additional arguments that Ms. Carr makes on appeal. First, she contends that her due process rights were violated because she was not made aware of the specifications supporting the charges against her until, in some cases, over three years after the incidents occurred. Essentially, this argument represents a rephrasing of a laches argument that was rejected by the Board. It fails here as well. A party claiming laches must establish both unreasonable delay in bringing a personnel action and resulting prejudice. *See Hoover v. Department of the Navy*, 957 F.2d 861, 863 (Fed.Cir.1992). We see no error in the Board's conclusion that Ms. Carr failed to prove either of these items. The delay was not unreasonable, as the termination was based on a pattern of behavior. *See Carr*, 78 M.S.P.R. at 331. The delay was not prejudicial, as Ms. Carr did not have difficulty remembering many of the incidents identified in the specifications and, indeed, admitted to many of them. *See id.* at 331–32.

 Second, Ms. Carr argues that the Board erred in considering misconduct that she alleges was the subject of prior disciplinary action taken against her. Specifically, she claims that the incidents covered by the April 22, 1992 letter of counseling were incorporated by reference in the July 19, 1993 reprimand, and therefore could not form the basis of any new charges against her.

The Board did not err in considering misconduct by Ms. Carr that occurred prior to her July 1993 reprimand. The Board found that only some of the incidents prior to the reprimand were within the scope of the reprimand, and that those outside its scope could be considered in determining whether the charges against Ms. Carr were supported by the evidence. *See id.* at 332. We see no error in this conclusion. In any event, Ms. Carr plainly was subject to discipline for incidents of misconduct that occurred after the reprimand, and those incidents supported the charges of (1) reckless disregard for physical safety, (2) persistent use of vulgar and profane language, and (3) demeaning comments and sexual harassment and ridicule. *See id.* at 345–46 (concurring opinion).

## CONCLUSION

For the foregoing reasons, the decision of the Board authorizing SSA to remove Ms. Carr from her position as an ALJ is

*AFFIRMED.*

## COSTS

Each party shall bear its own costs.