Joyce M. BEADLING, Petitioner,

v.

DEPARTMENT OF JUSTICE,
Respondent.

No. 00–3412.

United States Court of Appeals,
Federal Circuit.

Jan. 12, 2001.

Before SCHALL, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and DYK, Circuit Judge.

## DECISION

### PER CURIAM.

Joyce M. Beadling petitions for review of the final decision of the Merit Systems Protection Board ("Board") that sustained her demotion from the position of Clinical Nurse at the Federal Medical Center ("FMC") in Rochester, Minnesota. 83 M.S.P.R. 333 (1999) (table). The FMC is a facility of the Bureau of Prisons, which is a component of the Department of Justice ("agency"). Ms. Beadling was demoted to the position of Corrections Officer. The agency demoted Ms. Beadling after charging her with endangering the safety of an inmate and failing to follow FMC policy. We affirm.

## DISCUSSION

### I.

The first charge against Ms. Beadling, endangering the safety of an inmate, involved two separate specifications. The first specification was based upon an incident that occurred on June 22, 1997, in which Ms. Beadling injected 1 mg of the drug Ativan directly into an inmate-patient's vein. The agency contends that FMC policy requires that nurses inject intravenous ("IV") medication through an IV access device or heparin lock, and not directly into a patient's veins. The use of

the IV access device allows repeated intravenous administration of medication without insertion of a needle into a patient's vein each time medication is given. In addition to reducing discomfort to the patient, the IV access device ensures that the proper amount of medication is introduced into the patient's veins. The agency charged Ms. Beadling in a second specification of endangering the safety of an inmate when she used bed sheets to restrain a patient in July of 1997.

In its charge of failure to follow policy, the agency alleged that Ms. Beadling improperly brought a caustic carpet cleaning solution into the institution to clean an office carpet in August of 1997. FMC policy requires prior approval for the use of such a product by the appropriate department head and preparation of a Material Safety Data Sheet to ensure that users of the product are trained and familiar with it prior to use. Ms. Beadling received a verbal reprimand shortly after the incident, after it was discovered that she was responsible for bringing the cleaning solution into the institution.

On September 26, 1997, Ms. Beadling wrote a letter to the Minnesota Board of Nursing to report what she believed was a case of patient neglect on the part of a fellow FMC employee, Nurse Debra Archer. In her letter, Ms. Beadling stated that Ms. Archer had neglected to care for a patient during her night shift and had left him soaked in his own urine for over seven hours until Ms. Beadling discovered him in the morning. On October 9, 1997, Ms. Beadling told her supervisor, Nursing Director Krueger, that she had reported Ms. Archer's neglect.

In December of 1997, FMC conducted an investigation of Ms. Beadling's activities, focusing mainly on the incident involving the direct injection of Ativan. The investigation resulted in the charges de-

scribed above and Ms. Beadling's demotion, which she appealed to the Board.

Following a hearing, the administrative judge ("AJ") issued an initial decision in which he sustained Ms. Beadling's demotion. The AJ found that the agency had proven the charges against Ms. Beadling, although he determined that the specifications relating to the use of a bed sheet restraint and the use of an unauthorized cleaner represented "less serious" matters than the charge relating to the direct injection of IV medication and would not alone have been enough to warrant demotion. In sustaining the demotion, the AJ rejected Ms. Beadling's affirmative defense that her demotion was in retaliation for whistleblowing activity, namely, her September 26, 1997 letter to the Minnesota Board of Education. Ms. Beadling petitioned the Board for review. The Board granted the petition to the extent of receiving certain additional evidence proffered by Ms. Beadling and then affirmed the AJ's initial decision.

## II.

Our scope of review in an appeal from a decision of the Board is limited. Specifically, we must affirm the Board's decision unless we find it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c).

On appeal, Ms. Beadling does not dispute that she committed the acts which formed the basis for the charges against her. Rather, directing her attention to the most serious charge, the direct injection of Ativan, she asserts that the AJ erred in excluding certain expert testimony on the matter. She also asserts that substantial evidence does not support the AJ's conclusion that the direct injection of Ativan posed a danger to the patient.

■ Turning to the first point, Ms. Beadling argues that the witnesses whom she wanted to call would have testified as to the acceptability of direct injections. She also states that they would have testified as to the similarity of side effects from directly injected Ativan and Ativan injected through an IV access device. The AJ barred the proffered testimony as irrelevant. We review this ruling for abuse of discretion. *Turner v. Merit Sys. Prot. Bd.*, 806 F.2d 241, 246 (Fed.Cir.1986). Significantly, the AJ did not base his decision on whether the direct injection of Ativan results in side effects different from those resulting from the injection of Ativan through a heparin lock. Rather, the AJ based his decision on the finding that, without an IV access device, the uncertainty surrounding the administration of an antidote to an adverse drug reaction increased the risks in the event of such a reaction. In other words, the AJ's findings focused on the matter of a patient's risk of receiving proper treatment in an adverse situation, not on the matter of side effects from Ativan injection through an IV access device as opposed to side effects from direct Ativan injection. Under these circumstances, testimony on the latter point would not have been relevant. Similarly, testimony as to the acceptability of direct injection in other medical care facilities would have been irrelevant because the AJ determined that FMC policy states that nurses are not to use direct injection. We will not disturb the AJ's evidentiary ruling.

■ Ms. Beadling also points to the statement in the FMC Nursing Care Manual that "RNs may administer IV medications, including direct or bolus, intermittent or piggyback, and continuous

infusion." However, the AJ found this statement insufficient to prove that nurses are permitted to inject medications directly into a patient's veins. The AJ's finding is supported by substantial evidence. The rest of the manual refers only to administration of medication through IV access devices or heparin locks. In addition, the AJ relied on testimony of Mr. Agrimson, Ms. Beadling's Clinical Supervisor, and Ms. Krueger to prove that the "direct" language of the manual merely refers to injection directly into the IV access device, rather than directly into the patient's veins. These witnesses also testified that direct injection is not part of FMC's nurse-employee training, and that it is not accepted medical practice at FMC.

■ Ms. Beadling further argues that the AJ did not properly consider the testimony of witnesses who stated that direct injection is not dangerous enough to rise to the level of endangering the safety of a patient. Two nurses testified that an IV access device was not necessary because, in the event of an adverse drug reaction, an IV access device could be started fast enough or an antidote could be injected directly into the vein in time to counter the reaction. The AJ noted, however, that even Ms. Beadling's witnesses agreed that Ativan's negative side effects can be immediate and dangerous, even in patients who have not previously experienced side effects, and that the particular patient at issue was "a very difficult stick." Therefore, "given the patient's weakened condition, the immediacy of the effect of IV medication, the potentially serious side effects of Ativan, and the difficulty of accessing the patient's veins with a needle," the AJ determined that enough evidence existed to establish that Ms. Beadling's direct injection of Ativan posed a danger to the patient. Substantial evidence supports that finding.

## III.

■ In asserting whistleblowing as an affirmative defense to FMC's demotion action, Ms. Beadling was required to show by a preponderance of the evidence, 5 C.F.R. § 1201.56(a)(2)(iii); *Ellison v. Merit Sys. Prot. Bd.*, 7 F.3d 1031, 1034 (Fed. Cir.1993), that she made a protected disclosure, that subsequent to the disclosure she was subject to a disciplinary action, and that the disclosure was a contributing factor to the personnel action taken against her. If Ms. Beadling did show that her demotion was in retaliation for whistleblowing, the Board could sustain the demotion only if FMC established by clear and convincing evidence that it would have demoted her even in the absence of her whistleblowing. 5 U.S.C. § 1221(e); *Carr v. Social Security Admin.*, 185 F.3d 1318 (Fed.Cir.1999).

It is undisputed that Ms. Beadling made a protected disclosure and that the disciplinary action followed the disclosure. We will assume without deciding that the disclosure was a contributing factor to her demotion. The Board determined, however, that the agency had established by clear and convincing evidence that it would have taken the disciplinary action against her even in the absence of whistleblowing. This finding is supported by substantial evidence. As the AJ found, "the appellant's decision to directly inject Ativan into a patient's vein without using an IV access device was a serious divergence from accepted medical practice warranting a substantial response from the agency."

Finally, Ms. Beadling argues that the AJ erred in sustaining the penalty imposed by the agency because he did not consider that RN Jennifer Therring, who had been present as a "team leader" for the direct injection, received only a reprimand in contrast to Ms. Beadling's demotion. Ms.

Beadling states that the disparity of penalties indicates the retaliatory nature of her demotion. We reject this argument. The AJ's opinion indicates that he did not consider the penalty received by Ms. Therring, because, despite Ms. Therring's title of "team leader," witnesses testified that Ms. Beadling, as a senior nurse, was regarded as a role model for other nurses and that other nurses looked to her for guidance. In addition, it was Ms. Beadling who initiated and performed the direct injection.

For the foregoing reasons, the decision of the Board is affirmed.