NOTE: This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

---

**KENNETH M. PEDELEOSE,**
*Petitioner,*

**v.**

**DEPARTMENT OF DEFENSE,**
*Respondent.*

---

2012-3027

---

Petition for review of the Merit Systems Protection Board in case no. AT-1221-10-0662-W-1.

---

Decided: April 12, 2012

---

Kenneth M. Pedeleose, of Marietta, Georgia, pro se.

CHRISTOPHER A. BOWEN, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and STEVEN J. GILLINGHAM, Assistant Director.

---

Before PROST, MAYER, and WALLACH, *Circuit Judges.*

PER CURIAM.

Kenneth M. Pedeleose appeals a final decision of the Merit Systems Protection Board ("board") upholding a decision by the Department of Defense to suspend him for one day for making rude and disrespectful comments. *See Pedeleose v. Dep't of Defense*, No. AT-1221-10-0662-W-1 (MSPB Sept. 30, 2011). We *affirm.*

## BACKGROUND

Pedeleose is employed as an industrial engineer by the Defense Contract Management Agency ("DCMA"). He works as part of the C-5 engineering team, where his responsibilities include evaluating the performance of Lockheed Martin Corporation. On January 28, 2009, Pedeleose wrote an email to Colonel Casey Blake, a DCMA commander, stating that "you have shown me nothing in a commander that I can trust. I do not trust you." On February 9, 2009, Pedeleose sent an email to Nanette Nelson, his supervisor, which stated that "I can see the negative influence that your superiors . . . had upon you. While this is circumstantial you are beginning to exhibit the same negative characteristics."

Later that month, Pedeleose sent an email to twenty-five individuals, including Blake and several employees from Lockheed Martin, which expressed his concerns that changes had been made to a report he had prepared and which included a copy of his unedited draft report. Soon thereafter, Nelson gave Pedeleose a letter of direction, requiring him to provide his reports to her before sending the reports to others. Nelson explained that she was disappointed that Pedeleose had widely distributed copies of his report without complying with her request to amend the report "to include additional data and analy-

sis" which would support his conclusions. Pedeleose responded by sending Nelson an email accusing her of making "false statements" and asking her to "repeal the letter [of direction] in its entirety. On March 4, 2009, Pedeleose emailed several individuals in his chain of command, complaining that all of his reports now had to be routed through Nelson and attaching a copy of the letter of direction which Nelson had sent him.

Later that day, Gerard Woodlief, the lead systems engineer for the C-5 group, sent Pedeleose an email informing him that he should not "have distributed what appears to be a private Letter of Direction from your Immediate Supervisor." Pedeleose responded by telling Woodlief to "please mind your own business," and informing him that "[t]he Letter of Direction is an adverse action against me to cover-up for the contractor."

On March 6, 2009, Nelson sent Pedeleose an email stating that DCMA did not intend to cover up any information, but that all reports were required to contain information that was accurate and verifiable. Pedeleose responded by telling Nelson that her decision to send him the letter of direction was "way over the line," and that he believed she was "lying" about her motives.

On March 9, 2009, Pedeleose sent an email to Blake and several others, asking them to rescind Nelson's letter of direction. In response, Blake stated that he would "welcome the opportunity to interface" with Pedeleose, but that Pedeleose should first meet with his immediate supervisors to resolve work-related issues. Pedeleose responded by stating that he would meet with his immediate supervisors to discuss work-related issues, but that he would still like to meet with Blake to discuss the "cover-up related issues." Pedeleose further asserted that the DCMA's "legal directorate" was corrupt. In addition,

Pedeleose stated: "I am detecting that you and [Nelson] are relying on protection from a corrupt system. I hope this is not the case . . . . I will see you at 10:00 AM this Wednesday March 18, 2009 unless you absolutely refuse to meet with me."

Blake responded to Pedeleose's email on March 16, 2009, stating that while he appreciated Pedeleose's desire to meet with him, he was giving him a direct order to try to resolve his issues with his direct supervisors first. In response, Pedeleose stated that he had "no problem" meeting with his supervisors, but that Blake should "be advised that any fraudulent act committed by them (covering up for [a] contractor in this case) will fall upon you as well. I hold you accountable." Pedeleose further informed Blake that his "name, rank, and position will be associated with [Nelson's] misconduct."

On April 2, 2009, Nelson sent Pedeleose a notice of proposed suspension for "directing rude and disrespectful statements via e-mail" to members of his chain of command and other Department of Defense officials. On June 17, 2009, after giving Pedeleose an opportunity to respond, the DCMA issued a notice suspending him for one day. The notice stated that Pedeleose was "being disciplined not for raising any legitimate Agency or contractor concerns (although it is unclear that any where contained in the eleven emails listed in the [notice of proposed suspension]), but for the *manner* in which you expressed yourself."

In April 2010, Pedeleose filed an individual right of action appeal with the board, alleging that the DCMA had decided to suspend him in retaliation for protected whistle-blowing activities. An administrative judge determined that Pedeleose had made certain disclosures that were protected under the Whistleblower Protection Act of

1989 ("WPA"). *See* 5 U. S. C. § 2302(b)(8). Specifically, the administrative judge concluded that Pedeleose's statements regarding alleged fraud and abuse by Lockheed Martin and an alleged "cover up" by DCMA were protected disclosures. Furthermore, although the judge acknowledged that many of the statements made by Pedeleose had been "churlish" and "boorish," he determined that the DCMA should not have suspended Pedeleose, but should instead have given him training in "interpersonal skills." The administrative judge concluded, moreover, that the agency had failed to establish that it would have suspended Pedeleose even in the absence of any protected disclosures. On appeal, the full board reversed. It concluded that the DCMA had presented clear and convincing evidence demonstrating that it would have suspended Pedeleose even absent any allegedly protected disclosures. It noted, moreover, that "disrespect towards supervisors, especially on a continuous basis . . . is a serious offense because it undermines the capacity of management to maintain employee discipline."

Pedeleose then appealed to this court. We have jurisdiction pursuant to 5 U.S.C. § 7703(c).

DISCUSSION

This court's authority to review decisions of the board is limited by statute. We are required to affirm a board decision unless we find it to be: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. *Id.*; *Dickey v. Office of Pers. Mgmt.*, 419 F.3d 1336, 1339 (Fed. Cir. 2005).

We conclude that the board's decision upholding the agency's decision to suspend Pedeleose is supported by

substantial evidence and should be affirmed. Once an employee demonstrates that a disclosure protected by the WPA was a contributing factor in an agency's decision to take an adverse personnel action, the burden shifts to the agency to demonstrate by clear and convincing evidence that it would have taken the same personnel action even in the absence of the protected disclosure. *See* 5 U.S.C. § 2302(b)(8)(A); *Johnston v. Merit Sys. Prot. Bd.,* 518 F.3d 905, 909 (Fed. Cir. 2008); *Marano v. Dep't of Justice,* 2 F.3d 1137, 1141 (Fed. Cir. 1993). Here, as the board correctly determined, the DCMA carried its burden of establishing that it would have suspended Pedeleose even absent any protected disclosure. The record demonstrates that Pedeleose repeatedly sent rude and disrespectful emails to his supervisors and other individuals in his chain of command. He accused Blake, a DCMA commander, of being untrustworthy, and told Woodlief, his group's lead systems engineer, to "mind [his] own business." In addition, Pedeleose sent an email to Nelson, his immediate supervisor, in which he asserted that her actions were "way over the line" and that she had lied about her motives for sending him the letter asking him to send his reports to her before he distributed them to others. Given the angry and disrespectful tone and content of Pedeleose's emails, the agency had ample justification for imposing a one-day suspension. *See Carr v. Soc. Sec. Admin.*, 185 F.3d 1318, 1326 (Fed. Cir. 1999) (concluding that disciplinary action was appropriate where the "strong evidence" of an employee's misconduct far outweighed the presence of a retaliatory motive on the part of the employee's supervisors).

The WPA is designed to encourage the disclosure of government wrongdoing. *Horton v. Dep't of the Navy*, 66 F.3d 279, 282 (Fed. Cir. 1995). The statute is not, however, intended "to protect employees from their own

misconduct." *Carr*, 185 F.3d at 1326; *see also Greenspan v. Dep't of Veterans Affairs*, 464 F.3d 1297, 1305 (Fed. Cir. 2006) (emphasizing that "wrongful or disruptive conduct is not shielded by the presence of a protected disclosure"). Where, as here, an agency produces clear and convincing evidence that it would have undertaken the same disciplinary action even absent any protected disclosure, the WPA cannot be used to shield an employee from the consequences of his own wrongful actions. *See* 5 U.S.C. § 1221(e)(2).

The board likewise correctly concluded that the administrative judge should not have overturned the agency's choice of penalty for Pedeleose's misconduct. The board must give deference "to the agency's judgment unless the penalty exceeds the range of permissible punishment specified by statute or regulation, or unless the penalty is so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion." *Parker v. U.S. Postal Serv.,* 819 F.2d 1113, 1116 (Fed. Cir. 1987) (citations and internal quotation marks omitted). Given Pedeleose's continuing pattern of sending rude and disrespectful emails to his superiors, the DCMA acted reasonably in imposing the one-day suspension.

Pedeleose contends that he was treated more harshly than a similarly situated employee. In support, he relies upon the affidavit of DCMA employee Flake Farley. Farley averred that he had not been punished after telling a DCMA deputy commander that the C-5 team would not tolerate "backstabbers." As the board correctly determined, however, Farley's single statement about "backstabbers" was not comparable to the series of disrespectful comments made by Pedeleose.

We have considered Pedeleose's remaining arguments but do not find them persuasive. We therefore affirm the

board's decision upholding Pedeleose's one-day suspension.

## AFFIRMED