NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**KENNETH M. PEDELEOSE,**

*Petitioner*

**v.**

**DEPARTMENT OF DEFENSE,**

*Respondent*

---

2015-3090

---

Petition for review of the Merit Systems Protection Board in No. AT-1221-14-0260-W-1.

---

Decided: August 10, 2015

---

KENNETH M. PEDELEOSE, Acworth, GA, pro se.

JOSHUA E. KURLAND, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., ELIZABETH M. HOSFORD.

---

Before PROST, *Chief Judge,* NEWMAN, and TARANTO, *Circuit Judges.*

TARANTO, *Circuit Judge*.

The Defense Contract Management Agency (DCMA), a component of the United States Department of Defense, suspended Kenneth Pedeleose from his job for fourteen days. Mr. Pedeleose appealed to the Merit Systems Protection Board, alleging that the suspension was issued in retaliation for his whistleblowing. The Board denied him relief, concluding that the DCMA had shown, by clear and convincing evidence, that it would have suspended him for inappropriate behavior even if he had not made protected disclosures. Mr. Pedeleose appeals that decision. We affirm.

BACKGROUND

Mr. Pedeleose is a DCMA industrial engineer with 27 years of federal service. He works, and has worked at all times relevant to this appeal, at the DCMA contract management office located at a Lockheed Martin facility in Marietta, Georgia. Mr. Pedeleose's duties include reviewing Lockheed Martin's "Cost Performance Reports" and "provid[ing] technical support for negotiations . . . [by] perform[ing] . . . comprehensive, complete, and accurate technical evaluation with detailed analysis of cost proposals" that serve as the "foundation" for contract negotiation. Gov't App. 163.

On February 16, 2010, Mr. Pedeleose received notice that his supervisor, Ms. Nelson, proposed to suspend him for fourteen days on the ground that he engaged in "[i]nsolent and [i]ntimidating [b]ehavior [t]oward [m]anagement [o]fficials." *Id.* at 117. The proposal pointed to three incidents. First, on November 17, 2009, his second-line supervisor, Mr. Tessier, directed Mr. Pedelose to attend a meeting, and after the meeting Mr. Tessier asked him how it had gone. According to Mr. Tessier, Mr. Pedeleose became "very upset" and "point[ed] at [his] clipboard and slamm[ed] [his] pen [while]. . . insist[ing] [he] w[as] not needed at the meet-

ing." *Id.* at 118. Second, the following morning,[1] Mr. Pedeleose allegedly became "agitated" when the Contracts Operations Supervisor, Mr. Gentile, asked him which afternoon meetings he would be attending. *Id.* Mr. Gentile reported that he and Mr. Pedeleose moved into the hallway, where Mr. Pedeleose "raised [his] voice and pointed [his] finger" and "yell[ed] and threatened to file a complaint against [Mr. Gentile and others]." *Id.* "Mr. Gentile described [Mr. Pedeleose's] behavior as 'totally unprofessional and out of control,'" "felt very threatened by [Mr. Pedeleose's] actions," and "actually thought [Mr. Pedeleose] w[as] going to hit him." *Id.* Third, Mr. Tessier reported that Mr. Pedeleose left the confrontation with Mr. Gentile and came immediately to Mr. Tessier's office, where he "stated very loudly, more than once, that [he] wanted to go home." *Id.* Mr. Pedeleose "loudly stated that Mr. Gentile had disrespected and embarrassed [him], and . . . complained about taking [another employee's] workload." *Id.* Mr. Tessier described Mr. Pedeleose as "red faced and full of rage" and his conduct as "explosive" and a "display of aggression." *Id.* (internal quotation marks omitted). Both Mr. Tessier and Mr. Gentile wrote memoranda recounting the incidents.

On April 21, 2010, the relevant deciding official, Ms. Snow, sustained the proposed suspension. The suspension took effect April 25th, and Mr. Pedeleose returned to duty on May 9th.

Just under two years later, in 2012, Mr. Pedeleose filed a complaint with the Office of Special Counsel making a whistleblower allegation: he charged that he had been suspended in retaliation for reporting what he believed to be a violation of the Truth in Negotiations Act,

---

[1]    The Notice of Proposed Suspension misstates the second specification as having occurred on the morning of November 17, 2009.

*see* 10 U.S.C. § 2306a, to his supervisors and to the DCMA Office of Special Investigations. (His disclosures alleged that Lockheed Martin used two sets of data for contract proposals—one set for internal analysis, the other for external submissions.) The Office of Special Counsel closed its inquiry into Mr. Pedeleose's claim of whistleblower retaliation in December 2013 after concluding that the DCMA could prove, by clear and convincing evidence, that it would have suspended Mr. Pedeleose even if he had not made disclosures of potential wrongdoing. Mr. Pedeleose then sought redress from the Board under 5 U.S.C. §§ 1214(a)(3) and 1221.

A Board administrative judge determined that Mr. Pedeleose's claim of whistleblower retaliation failed for two reasons. The first was that Mr. Pedeleose could not establish that the alleged whistleblower disclosures at issue were a contributing factor to his suspension.[2] The second was that the DCMA had shown, by clear and convincing evidence, that it would have suspended him even if he had not made the disclosures. *Pedeleose v. Dep't of Defense* (*Initial Decision*), No. AT-1221-14-0260-W-1, slip. op. at 7–8 (M.S.P.B. July 28, 2014).

When Mr. Pedeleose petitioned for review of the initial decision, the Board affirmed the denial of relief. The Board first concluded, contrary to the conclusion of the administrative judge, that Mr. Pedeleose had shown that some of his disclosures were a contributing factor to his suspension under the "'knowledge/timing test.'" *Pedeleose v. Dep't of Defense* (*Final Decision*), No. AT-1221-14-0260-W-1, slip. op. at 6, 9 (M.S.P.B. Jan. 22, 2015) (quot-

---

[2] The administrative judge outlined seven relevant disclosures in his initial decision. Those disclosures range in date from October 2009 to March 2010. Mr. Pedeleose does not appear to dispute the administrative judge's list of the disclosures relevant to this appeal.

ing *Wadhwa v. Dep't of Veterans Affairs*, 110 M.S.P.R. 615, ¶ 12, *aff'd*, 353 F. App'x 435 (Fed. Cir. 2009)). "Under that test," the Board has ruled, a whistleblower "can prove the contributing factor element through evidence that the official taking the personnel action knew of the . . . disclosure and took the personnel action within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action." *Wadhwa*, 110 M.S.P.R. at ¶ 12. Here, the Board concluded, Mr. Pedeleose had satisfied the knowledge/timing standard by showing that his supervisor issued the February 16, 2010 notice of proposed suspension only thirteen days after the February 3rd meeting in which, the parties agree, she first learned of six of Mr. Pedeleose's disclosures.[3]

The Board nevertheless rejected Mr. Pedeleose's claim. Like the Office of Special Counsel and the administrative judge, it concluded that the DCMA had proven, by clear and convincing evidence, that it would have suspended Mr. Pedeleose even if he had not made protected disclosures. It relied on evidence that his supervisor made the decision to discipline him—and contacted a DCMA employee-relations specialist in that regard—well before learning of the protected disclosures.

Mr. Pedeleose appeals the Board's decision. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

---

[3]    The Board, like the administrative judge, concluded that a March 10, 2010 disclosure could not have been a contributing factor to Mr. Pedeleose's suspension because it "postdates the proposed suspension" and "there is no evidence that the deciding official was aware of [the March 10th disclosure] at the time she rendered her decision." *Final Decision*, slip op. at 7.

DISCUSSION

On appeal, Mr. Pedeleose alleges that the proceedings against him were biased. He also attacks the evidence underlying his suspension. He argues that the DCMA, anticipating a complaint against Mr. Gentile, Ms. Nelson, and Mr. Tessier, prepared documents containing false statements regarding his conduct, and it then used those documents to discredit his whistleblowing. He recites numerous evidentiary or other criticisms of the agency's case.

But it is not this court's function to re-weigh the evidence. *See Bieber v. Dep't of the Army,* 287 F.3d 1358, 1364 (Fed. Cir. 2002); *Schab v. Dep't of Veterans Affairs*, 142 F. App'x 449, 450 (Fed. Cir. 2005). We must affirm the Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see also Terban v. Dep't of Energy*, 216 F.3d 1021, 1024 (Fed. Cir. 2000). Applying our restricted standard of review, we cannot disturb the Board's decision here.

Mr. Pedeleose's claim for relief from the Board in this appeal under 5 U.S.C. § 1221(e)(1) depends on his establishing whistleblower retaliation under the Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8). To do so, an employee "must establish four elements: (1) the acting official has the authority to take, recommend, or approve any personnel action; (2) the aggrieved employee made a protected disclosure; (3) the acting official used his authority to take, or refuse to take, a personnel action against the aggrieved employee; and (4) the protected disclosure was a contributing factor in the agency's personnel action." *Chambers v. Dep't of Interior*, 602 F.3d 1370, 1376 (Fed. Cir. 2010). Even if an aggrieved employee establishes those elements, however, "there is still no

violation of the [Whistleblower Protection Act] if the agency can prove by clear and convincing evidence that it would have taken the same personnel action(s) in the absence of the protected disclosure." *Id.* (citing 5 U.S.C. § 1221(e)(2)).

In Mr. Pedeleose's case, the government never disputed that the deciding official had authority to take, and did take, a personnel action against him. *Initial Decision*, slip op. at 4. The parties likewise agree that Mr. Pedeleose made protected disclosures. *Id.* at 5. And the government does not challenge the Board's conclusion that six of Mr. Pedeleose's disclosures were a contributing factor to his suspension. *See* Br. of Appellee 19–21. The only issue before us, therefore, is whether the Board appropriately ruled that the DCMA established by clear and convincing evidence that it would have suspended Mr. Pedeleose even if he had not made the protected disclosures in question.

When evaluating whether an agency would have taken a personnel action against a whistleblower had the whistleblowing not occurred, we have focused on three factors: "the strength of the agency's evidence in support of its personnel action; the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated." *Carr v. Social Sec. Admin.*, 185 F.3d 1318, 1323 (Fed. Cir. 1999); *see, e.g.*, *Chambers*, 602 F.3d at 1382 (noting that the *Carr* factors "should be considered"). Here, substantial evidence supports the Board's findings on the *Carr* factors and its ultimate determination that the DCMA would have suspended Mr. Pedeleose even if he had not made the protected disclosures at issue.

With respect to the first factor, the agency's evidence includes the written accounts from the two supervisors

who observed Mr. Pedeleose's offensive conduct. Gov't App. 125–27. Those "memoranda contain[] detailed descriptions of the incidents" that led to Mr. Pedeleose's suspension, and were written "while the incidents . . . were still fresh in [the supervisors'] minds." *Final Decision*, slip op. at 10. Further, sufficient evidence shows that the suspension process was initiated before Mr. Pedeleose's supervisor learned of his disclosures—Ms. Nelson and the DCMA's Director of Labor and Employee Relations both submitted declarations to that effect. Moreover, Mr. Pedeleose's disciplinary record in the year leading up to the suspension was far from clean. The suspension itself was based on three separate incidents occurring within a 24-hour period. In addition, Mr. Pedeleose received a one-day suspension in June 2009 for rude and disrespectful statements, a suspension this court affirmed in *Pedeleose v. Dep't of Defense*, 479 F. App'x 341 (Fed. Cir. 2012). He also received a letter of warning and instruction in September 2009 "directing him to carry out his job duties without threats and defiance." *Final Decision*, slip op. at 11; Gov't App. 129–30. And he received another letter of instruction in January 2010 "based on a complaint by another employee who alleged that [Mr. Pedeleose] had repeatedly made disparaging and unprofessional statements directed at management." *Final Decision*, slip op. at 11; Gov't App. 121–22. The DCMA's "Table of Penalties" provides that appropriate discipline for a second instance of "[d]isrespectful conduct, use of insulting, abusive, or obscene language" ranges from a ten-day suspension to removal. Gov't App. 175–76. The fourteen-day suspension here, based on more than two incidents, falls well within this range.[4]

---

[4]   Mr. Pedeleose asserts that the January 20 letter of warning contained false allegations. Br. of Appellant at Cont'n pp. 21–24; Gov't App. 205. Even if Mr. Pedeleose

With respect to the second *Carr* factor, there is evidence that Mr. Pedeleose's supervisor, Ms. Nelson, was "arguably implicated" by Mr. Pedeleose's assertion that management was "rewriting his reports to conceal negative information about [the contractor]." *Final Decision*, slip op. at 12. The Board properly acknowledged that these allegations might provide motivation for Ms. Nelson to retaliate. *Id.*

Finally, after noting that the third *Carr* factor does not apply to Mr. Pedeleose's case, because the parties agree that no similarly situated, non-whistleblower employees exist, the Board concluded that "any evidence of motive to retaliate on the part of the relevant agency officials does not outweigh the strength of the evidence in support of the agency's suspension decision." *Id.* at 12–13. We see no reversible error in this weighing of the evidence, and we may not re-weigh it ourselves. *See Bieber*, 287 F.3d at 1364. We therefore cannot say that the Board's decision denying corrective action based on Mr. Pedeleose's claim of whistleblower retaliation was arbitrary or capricious, contrary to law, or unsupported by substantial evidence. 5 U.S.C. § 7703(c).

We have considered Mr. Pedeleose's additional arguments and concluded that they do not justify reversal. In particular, Mr. Pedeleose's claims of bias are conclusory and point to no action by the Board or administrative judge that rises to the level of "evidencing 'a deep-seated favoritism or antagonism that would make fair judgment impossible.'" *Bieber*, 287 F. 3d at 1363 (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

---

were right in that assertion, our limited standard of review and the other evidence would require affirmance of the Board's findings on the first *Carr* factor and its ultimate determination that the DCMA would have suspended him even if he had not engaged in whistleblowing.

CONCLUSION

For the foregoing reasons, the decision of the Board is affirmed.

**AFFIRMED**