## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

DONALD D. PYRON,
        Appellant,

        v.

DEPARTMENT OF
    TRANSPORTATION,
        Agency.

DOCKET NUMBER
SF-1221-15-0076-W-1

DATE: February 19, 2016

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Donald D. Pyron, Vancouver, Washington, pro se.

Alexandra R. Randazzo, Esquire, Washington, D.C., for the agency.

David F. Shayne, Esquire, Renton, Washington, for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

### FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which denied his request for corrective action in this individual right of action (IRA) appeal. Generally, we grant petitions such as this one only when: the initial

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. See 5 C.F.R. § 1201.117(c).

decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## BACKGROUND

¶2    The appellant serves as an Airway Transportation System Specialist with the agency, and is responsible for maintaining and repairing power and lighting equipment at the Portland International Airport (PIA). Initial Appeal File (IAF), Tab 6 at 102, Tab 28, Hearing Compact Disc (HCD) (testimony of the appellant). On October 24, 2013, after the appellant had unsuccessfully attempted to repair a component of PIA's approach lighting system (ALS) for 2 weeks, his first-level supervisor, T.F., assigned other technicians to the repair, and directed the appellant to work on a different assignment. HCD (testimony of the appellant, T.F., and K.D., the appellant's third-level supervisor). Subsequently, the appellant walked into T.F.'s office, dropped his badge and keys on T.F.'s desk, stated, "I am out of here," and left. IAF, Tab 6 at 104, 145; HCD (testimony of T.F.). The appellant then proceeded to his personal vehicle and drove off. IAF, Tab 6 at 104, 145; HCD (testimony of T.F.).

¶3 After leaving work, the appellant telephoned K.D. in an agitated state, made several unintelligible statements, and then hung up on her. HCD (testimony of the appellant and K.D.). He also contacted the agency's Pacific Operations Control Center (POCC) and Office of the Inspector General (OIG) to report alleged maintenance issues and problems with equipment at PIA. IAF, Tab 6 at 164-74, Tab 17 at 25-30, Tab 19 at 109-11.

¶4 Following discussions with his second-level supervisor, R.W., the appellant returned to work the week of October 28, 2013. HCD (testimony of R.W. and T.F.). On December 31, 2013, the agency issued a notice proposing to suspend the appellant for 2 days based upon a charge that he was absent without leave (AWOL) on October 24 and 25, 2013. IAF, Tab 6 at 66-67. The appellant did not respond and, on February 13, 2014, the deciding official, T.F., issued a final decision imposing the 2-day suspension. *Id.* at 106-07. Thereafter, the appellant filed a complaint with the Office of Special Counsel (OSC), alleging that the agency took various actions against him, including the 2-day suspension, in retaliation for protected whistleblowing. IAF, Tab 10 at 4-7. After OSC closed its inquiry into his allegations, IAF, Tab 1 at 59-63, the appellant filed the instant IRA appeal with the Board, IAF, Tab 1.

¶5 On appeal, the appellant claimed that he made protected disclosures or engaged in protected activity when he reported his concerns regarding maintenance issues and problems with equipment to the OIG and POCC, and when he called K.D. on October 24, 2013, and allegedly stated that T.F. was "doing dangerous things." IAF, Tab 18 at 5, Tab 21 at 3. He claimed that in retaliation for these protected disclosures and protected activity: (1) T.F. required him to complete on-the-job training regarding the ALS; (2) T.F. threatened to fire him; (3) T.F. refused to allow him to work on critical lighting systems; and (4) the agency suspended him for 2 days. IAF, Tab 18 at 5-6, Tab 25 at 4-5.

¶6     After finding that the Board had jurisdiction over the appeal, IAF, Tab 7, and following a hearing, the administrative judge issued an initial decision denying the appellant's request for corrective action, IAF, Tab 29, Initial Decision (ID).  The administrative judge found that the appellant did not raise his alleged protected disclosures to the POCC before OSC and, therefore, the appellant had not exhausted his administrative remedy as to these disclosures.  ID at 6; *see* IAF, Tab 10 at 4-7.  He further found that the appellant's call to K.D. was not protected under 5 U.S.C. § 2302(b)(8), because, even assuming that the appellant stated that T.F. was "doing dangerous things," such an allegation was too vague and conclusory to constitute a protected disclosure.   ID at 5-6.  However, the administrative judge found that the appellant established that he engaged in protected activity under 5 U.S.C. § 2302(b)(9)(C) when he disclosed the alleged maintenance issues and problems with agency equipment to the agency's OIG.  ID at 4-5.

¶7     The administrative judge then proceeded to analyze each of the alleged personnel actions raised by the appellant on appeal.  ID at 6-10.  He found that requiring the appellant to complete the on-the-job training regarding the ALS was not a personnel action because it did not constitute a significant change in the appellant's duties.  ID at 8-9.  He also found that the alleged threat to fire the appellant was not a personnel action because T.F.'s statement at issue did not constitute an actionable threat to take disciplinary action.  ID at 10.  The administrative judge assumed without finding that prohibiting the appellant from working on critical lighting systems could be a significant change in his duties, but found that the appellant's protected activity was not a contributing factor in this action because T.F. imposed the prohibition before he was aware of the appellant's protected activity.  ID at 8.  Finally, the administrative judge found that the 2-day suspension was a personnel action under the Whistleblower Protection Enhancement Act of 2012 (WPEA), and that the appellant's protected activity was a contributing factor in the agency's decision to suspend the

appellant. ID at 7. He determined, however, that the agency established by clear and convincing evidence that it would have taken the same action in the absence of any protected activity. ID at 10-16.

¶8        The appellant has filed a petition for review of the initial decision, and the agency has responded in opposition to the petition for review. Petition for Review (PFR) File, Tabs 1, 4.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶9        In an IRA appeal, after establishing the Board's jurisdiction, the appellant then must establish a prima facie case of whistleblower retaliation by proving by preponderant evidence that: (1) he made a disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). 5 U.S.C. § 1221(e)(1); *Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶ 6 (2015). If the appellant makes this prima facie showing, the burden shifts to the agency to prove by clear and convincing evidence that it would have taken the same personnel action in the absence of the protected disclosure or protected activity. 5 U.S.C. § 1221(e)(2); *Webb*, 122 M.S.P.R. 248, ¶ 6.

¶10        On review, neither party challenges the administrative judge's findings that the appellant engaged in protected activity under 5 U.S.C. § 2302(b)(9)(C) when he disclosed the alleged maintenance issues and problems with agency equipment to the agency's OIG, and that this protected activity was a contributing factor in the agency's decision to suspend the appellant for 2 days. ID at 4-5, 7; *see* PFR File, Tabs 1, 4. We discern no basis to disturb these well-reasoned findings on review. However, the appellant does appear to challenge the administrative judge's finding that numerous actions he raised did not constitute personnel actions under 5 U.S.C. § 2302(a) and that the agency did not meet its burden of

proof by clear and convincing evidence.  As discussed below, these arguments do not provide a basis for granting his petition for review.

The administrative judge correctly found that several of the actions raised by the appellant did not constitute personnel actions under the WPEA.

¶11    Although the appellant's arguments on review are somewhat unclear, he appears to contend that the administrative judge erred in finding that several of the actions raised in his appeal did not constitute personnel actions under the WPEA.  PFR File, Tab 1 at 2.  First, he argues that T.F. made "numerous threats" against him in retaliation for protected whistleblowing, although he fails to provide any further information or argument regarding the alleged threats.  *Id.* The Board's jurisdiction in an IRA appeal is limited to those personnel actions that the appellant raised before OSC.  *Mason v. Department of Homeland Security*, 116 M.S.P.R. 135, ¶ 8 (2011); *Roach v. Department of the Army*, 82 M.S.P.R. 464, ¶¶ 9-10 (1999).  We agree with the administrative judge that the appellant failed to demonstrate that he exhausted his administrative remedies with respect to any threats other than T.F.'s alleged threat to fire him. ID at 10; *see* IAF, Tab 10 at 4-7.

¶12    We further agree with the administrative judge that the statement that the appellant contended was a threat to fire him did not constitute a personnel action. ID at 9-10.  Despite the broad reading afforded to the term "threatened," the Board has held that an agency must take some action signifying intent to take a personnel action.  *Rebstock Consolidation v. Department of Homeland Security*, 122 M.S.P.R. 661, ¶¶ 11-12 (2015) (finding that the appellants' mere belief that they might face disciplinary action, in the absence of any notice from the agency that they might face disciplinary action, did not constitute a nonfrivolous allegation that the agency had threatened to take a personnel action); *Daniels v. Department of Veterans Affairs*, 105 M.S.P.R. 248, ¶ 8 (2007) (finding that a statement that the appellant "may not be qualified for [her] job" was too distant from the possibility of removal to constitute a threatened personnel action

under the Whistleblower Protection Act).  Here, the record reflects that, at a staff meeting in April 2014, just before T.F. was scheduled to depart for a 60-day detail to another office, he stated that he knew some people were unhappy working for him, that he would be gone for 60 days, and that people had 60 days to find a new job if they did not want to work for him.  HCD (testimony of the appellant, T.F., and the appellant's coworkers, D.M. and R.M.).  The administrative judge correctly found that T.F.'s statement was at most a suggestion that the appellant and other employees who did not enjoy working for T.F. should consider voluntarily transferring to other positons.  ID at 10.  The statement did not indicate that T.F. intended to take disciplinary action against the appellant, or any other employee.

¶13        On review, the appellant also argues that T.F. retaliated against him by requiring him to complete on-the-job training regarding the ALS.  PFR File, Tab 1 at 2.  He contends that another employee, B.S., was not required to complete training after having unspecified "problems" for 20 months.  *Id.*  A significant change in duties can constitute a personnel action under the WPEA.  *See* 5 U.S.C. § 2302(a)(2)(A)(xii).  However, we agree with the administrative judge that the on-the-job training regarding the ALS was not a significant change in the appellant's duties.  ID at 8-9.  The administrative judge correctly found that the training was expected to take a small fraction of the appellant's time, and was temporary in nature.  ID at 9.  Specifically, the training was expected to take approximately 73 hours, in addition to some travel time, over a 90-day period.  IAF, Tab 25 at 4.  The administrative judge also credited R.W.'s testimony that agency employees routinely were required to complete similar on-the-job trainings.  ID at 9; *see* HCD (testimony of R.W.).  The appellant's arguments on review constitute mere disagreement with the administrative judge's well−reasoned findings, and fail to provide a basis for disturbing the initial decision.  *See Shannon v. Department of Veterans Affairs*, 121 M.S.P.R. 221, ¶ 13

(2014) (finding that an appellant's mere disagreement with the administrative judge's findings is insufficient to disturb the initial decision).

<u>The administrative judge correctly found that the agency established by clear and convincing evidence that it would have suspended the appellant for 2 days absent his protected activity.</u>

¶14    Because the appellant met his burden to establish a prima facie case of whistleblowing, the burden shifted to the agency to prove by clear and convincing evidence that it would have taken the same action in the absence of the appellant's protected activity. *See Webb*, 122 M.S.P.R. 248, ¶ 6. In determining whether an agency has met this burden, the Board will consider the following factors: (1) the strength of the agency's evidence in support of the action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence. *Lu v. Department of Homeland Security*, 122 M.S.P.R. 335, ¶ 7 (2015). Rather, the Board will weigh the factors together to determine whether the evidence is clear and convincing as a whole. *Id.*

¶15    We agree with the administrative judge that the agency established by clear and convincing evidence that it would have suspended the appellant for 2 days in the absence of his protected activity. ID at 10-16. In reaching this conclusion, the administrative judge carefully balanced the *Carr* factors and considered all of the evidence presented as required by *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012). On review, the appellant has provided no basis for us to disagree with the administrative judge's findings. Specifically, we agree with the administrative judge that the agency presented strong evidence in support of the 2-day suspension. ID at 11-12.

¶16    It is undisputed that that appellant walked off the job at approximately 8:00 a.m. on October 24, 2013, without requesting leave and that he never provided any justification that would excuse his absence.  ID at 11; PFR File, Tab 1; *see* IAF, Tab 6 at 104, 145; HCD (testimony of T.F.).  However, approximately 4 hours after the appellant walked off the job, R.W. left the appellant a voicemail message instructing him not to return to work until they had the opportunity to speak the following Monday, October 28, 2013, because R.W. was concerned that the appellant might pose a security threat.  IAF, Tab 23 at 4; HCD (testimony of R.W.).  Thus, the administrative judge properly found that the evidence strongly supported a finding that the appellant was AWOL for 4 hours on October 24, 2013, but did not support a finding that he was AWOL between noon on October 24, 2013, and the end of his scheduled shift on October 25, 2013.  ID at 11.

¶17    However, we agree with the administrative judge that, even if the appellant was only AWOL for 4 hours, a 2-day suspension was a "surprisingly lenient" penalty, considering the recommendations in the agency's table of penalties.  ID at 11.  The appellant's AWOL on October 24, 2013, was considered his second offense, because slightly more than 1 year earlier, he had walked out of a meeting, ignoring his supervisor's instructions to return.  IAF, Tab 17 at 21-23.  The table of penalties states that the penalty for a second offense of "unauthorized early departures" or "unauthorized absence from the worksite during duty hours" ranges from a 5- to 10-day suspension.  IAF, Tab 6 at 109.  Therefore, the 2-day suspension imposed by the agency was less than half of the minimum recommended penalty for the appellant's offense.  *Id.*  Accordingly, we agree with the administrative judge that, even if the appellant was AWOL for only 4 hours, the agency had ample justification for suspending him for 2 days.  ID at 12.

¶18    We further agree with the administrative judge that T.F. and R.W., the agency officials involved in the decision to suspend the appellant, had a moderate

motive to retaliate against the appellant. ID at 13. The agency's OIG initiated an investigation into the appellant's complaints, and concluded that the majority of them were unsubstantiated. IAF, Tab 6 at 164-80. The sole allegations that the OIG found to be substantiated pertained to the appellant's failure to repair equipment assigned to him and his failure to document equipment maintenance problems through regular channels. *Id.* at 164, 175-80; HCD (testimony of the appellant and T.F.). Nevertheless, although the appellant's protected activity called his own competence into question, it also potentially indirectly implicated T.F.'s and R.W.'s performance as supervisors. ID at 13.

¶19     We discern no error in the administrative judge's conclusion that any inference that a potential motive to retaliate against the appellant played a role in his suspension was undercut by the fact that K.D., R.W., and T.F. already had tentatively decided to suspend the appellant for 2 days prior to learning of his protected activity. ID at 13. The record reflects that they had tentatively decided to suspend the appellant for 2 days by October 28, 2013, although R.W. continued to consult with a labor employee relations specialist after that date regarding whether more serious discipline was potentially warranted. HCD (testimony of K.D., R.W., and T.F.). The record also supports the administrative judge's finding that T.F. was not aware that the appellant had engaged in protected activity until November 22, 2013, and that, although R.W. had a general idea that the appellant had filed some sort of complaint, he also was unaware of any of the details of the appellant's protected activity until late November 2013, after the tentative decision to suspend the appellant already had been made. HCD (testimony of R.W. and T.F.).

¶20     On review, the appellant contends that, in the initial decision, the administrative judge failed to mention that three of his witnesses testified that T.F. stated that the appellant "threw each [and every one] under the bus." PFR File, Tab 1 at 2. As an initial matter, the administrative judge's failure to mention all of the evidence of record does not mean that he did not consider it in

reaching his initial decision. *See Marques v. Department of Health & Human Services*, 22 M.S.P.R. 129, 132 (1984), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985) (Table). Furthermore, the appellant has failed to explain how this testimony demonstrates that the administrative judge erred in his findings regarding T.F.'s motive to retaliate against him, or any other aspect of the initial decision. PFR File, Tab 1 at 2. Although three of the appellant's coworkers testified that, at a meeting in late October or early November 2013, T.F. stated that the appellant threw his coworkers "under the bus," they either lacked knowledge of what this statement referenced, failed to explain what this statement referenced, or believed that T.F. was referencing the appellant's calls to the POCC.[2] HCD (testimony of the appellant's coworkers, F.T., D.M., and R.M.). The scope of an IRA appeal is limited to those disclosures raised before OSC, and because the appellant did not raise his alleged disclosures to the POCC before OSC, we lack jurisdiction to adjudicate any claims that the agency suspended him in retaliation for those disclosures. *See Sazinski v. Department of Housing & Urban Development*, 73 M.S.P.R. 682, 685 (1997) (holding that the scope of an IRA appeal is limited to those disclosures raised before OSC). For these reasons, the appellant has failed to establish that the testimony of his three witnesses forms any basis for disturbing the initial decision.

¶21 On review, the appellant also argues that T.F. "used a double standard" with him compared to other employees as a result of his whistleblowing. PFR File, Tab 1 at 2. However, we agree with the administrative judge that the evidence regarding the agency's treatment of similarly situated employees who are not whistleblowers did not weigh in either party's favor. ID at 15. The agency presented limited evidence on this issue. K.D. testified that she had suspended employees for being AWOL on five or six occasions, but she did not provide any

---

[2] Although T.F. was not aware of the appellant's disclosures to the OIG until late November 2013, he was aware of the appellant's calls to the POCC by October 28, 2013. IAF, Tab 6 at 145; HCD (testimony of T.F.).

further detail regarding the circumstances of their misconduct, or the length of the suspensions imposed. HCD (testimony of K.D.). Two of the appellant's witnesses testified that they had heard that other employees sometimes left early and were not disciplined, but the appellant did not present evidence that T.F. was aware of this misconduct, and R.M. testified that T.F. would not have been aware of the misconduct, because he worked at a different physical location. HCD (testimony of D.M. and R.M.). We further agree with the administrative judge that evidence regarding employees who drove under the influence of alcohol, used drugs, or took showers on duty time was not relevant, because those employees were not similarly situated. ID at 15. Thus, because there was limited relevant evidence presented by either party regarding the agency's treatment of similarly situated employees, the administrative judge correctly concluded that the third *Carr* factor did not weigh in either party's favor. ID at 15; *see Phillips v. Department of Transportation*, 113 M.S.P.R. 73, ¶ 30 (2010) (finding that, where the record contained no evidence regarding the agency's treatment of similarly situated nonwhistleblowers, the third *Carr* factor was not a significant factor for the Board's analysis).

¶22        Based upon the foregoing, we agree with the administrative judge that the agency established by clear and convincing evidence that it would have suspended the appellant for 2 days in the absence of his protected activity. ID at 10-16. We also have considered the appellant's allegation on review that lying and corruption are rampant in the Federal Aviation Administration, but find that this vague and generalized assertion does not form a basis for granting his petition for review. PFR File, Tab 1 at 2; *see Tines v. Department of the Air Force*, 56 M.S.P.R. 90, 92 (1992) (finding that a petition for review must contain sufficient specificity to enable the Board to ascertain whether there is a serious evidentiary challenge justifying a complete review of the record).

<u>We have not considered the documents submitted by the appellant in the first instance on review.</u>

¶23    Finally, with his petition for review, the appellant has submitted numerous documents that are not contained in the record below, including an alleged transcript of T.F.'s comments at a meeting in April 2014, the appellant's correspondence with a U.S. Senator, and various documents regarding training, maintenance issues, and work assignments. PFR File, Tab 1 at 28-57. All of these documents appear to predate the initial decision, and the appellant has not explained why they were unavailable before the record closed below despite his due diligence. *See Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 214 (1980) (finding that under 5 C.F.R. § 1201.115, the Board will not consider evidence submitted for the first time with the petition for review absent a showing that it was unavailable before the record was closed despite the party's due diligence). For this reason, we have not considered the documents that the appellant submits in the first instance on review.

### NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit.

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices under 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you

may request review of this final decision by the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction. The court of appeals must receive your petition for review within 60 days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. You may choose to request review of the Board's decision in the U.S. Court of Appeals for the Federal Circuit or any other court of appeals of competent jurisdiction, but not both. Once you choose to seek review in one court of appeals, you may be precluded from seeking review in any other court.

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in title 5 of the U.S. Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the U.S. Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11. Additional information about other courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for your appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The

Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:           _____
                                         William D. Spencer
                                         Clerk of the Board

Washington, D.C.