**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2016 MSPB 38**

Docket No. DA-0752-14-0353-I-1

**William R. Campbell,**

**Appellant,**

**v.**

**Department of the Army,**

**Agency.**

November 2, 2016

William R. Campbell, El Paso, Texas, pro se.

Russell Wardlow, Fort Bliss, Texas, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## OPINION AND ORDER

¶1      The appellant has filed a petition for review of the initial decision, which sustained his demotion for negligent performance of duty and found that he did not prove his affirmative defense of reprisal for whistleblowing. For the reasons set forth below, we DENY the petition for review. Except as expressly MODIFIED by this Opinion and Order to supplement the administrative judge's analysis of the appellant's whistleblower reprisal claim, we AFFIRM the initial decision.

BACKGROUND

¶2      The initial decision contains a lengthy discussion of the facts in this appeal, but the essential facts are that the appellant occupied a GS-15 position as Director of the agency's Directorate of Plans, Training, Mobilization, and Security (DPTMS) at Fort Bliss, Texas. Initial Appeal File (IAF), Tab 1 at 7-8. DPTMS is composed of several branches, including the Range Operations Branch (Range Branch). IAF, Tab 7 at 23. The appellant's responsibilities included establishing and maintaining effective internal controls, which are the agency's mechanisms and procedures for protecting agency resources. IAF, Tab 6 at 102.

¶3      In May 2012, several employees of the Range Branch were arrested and charged with theft of Government property, including furniture, which had been acquired for use in military training villages. IAF, Tab 37 at 4-68, Tab 38 at 4-68, Tab 19 at 50. As an outgrowth of the agency's investigation into the theft, the appellant also suspected wrongdoing in the use of Government purchase cards (GPC) in the Range Branch. IAF, Tab 7 at 15. Following an internal review that led to some actions, the appellant requested an external audit. *Id.* The Garrison Commander then initiated an investigation of GPC use in the Range Branch pursuant to Army Regulation (AR) 15-6. *Id.* at 11. The AR 15-6 investigation found, among other things, that: management controls for the GPC program at the Range Branch were not in place; the appellant did not adequately monitor the GPC program at the Range Branch; the appellant did not clearly understand or communicate agency policy and priorities regarding the GPC program; and the absence of management controls for the Range Branch's GPC program caused the misuse of the program. *Id.* at 18.

¶4      Following the AR 15-6 investigation, the agency proposed the appellant's removal based on a charge of negligent performance of duty. *Id.* at 4-6. The charge was supported by three specifications involving the alleged absence of management controls in the Range Branch GPC program and the lack of management controls regarding the furniture. *Id.* at 4. After the appellant

responded to the notice of proposed removal, IAF, Tab 6 at 13-18, the deciding official sustained the charge but mitigated the penalty to a demotion to a GS-12 Workforce Development Specialist position, IAF, Tab 1 at 11-13.

¶5      The appellant filed a Board appeal of his demotion, arguing that the charge against him was "unfounded" and that he had instituted required policies and procedures and conducted required inspections. *Id*. at 5. He also raised an affirmative defense of reprisal for whistleblowing activity, alleging that the agency demoted him in retaliation for his having reported to his superior his suspicion that employees were engaging in theft of Government property and seeking an external investigation of the GPC program. *Id*.

¶6      After holding a hearing, the administrative judge issued an initial decision that affirmed the appellant's demotion. IAF, Tab 43, Initial Decision (ID) at 1, 38. The administrative judge found that: the agency proved the charge and each specification by preponderant evidence, ID at 5-32; the appellant did not prove his affirmative defense, ID at 32-35; and the penalty of demotion was reasonable and promoted the efficiency of the service, ID at 35-37.

¶7      The appellant has filed a petition for review, arguing that the agency applied outdated GPC program operating procedures in its investigation, he took immediate action once he learned of control issues within the Range Branch, the control weaknesses in the Range Branch were not material, and other directors had accountability issues and were not demoted. Petition for Review (PFR) File, Tab 1 at 4-5. The agency has filed a response in opposition to the petition for review, and the appellant has filed a reply to the agency's response. PFR File, Tabs 7-8.

## ANALYSIS

### The administrative judge correctly found that the agency proved the charge by preponderant evidence.

¶8      In the initial decision, the administrative judge thoroughly analyzed the hearing testimony and documentary evidence and found that the agency proved

the charge. ID at 5-32. The appellant challenges this finding on review, arguing that the investigators improperly used an outdated regulation, AR 715-xx, in evaluating the GPC program. PFR File, Tab 1 at 4; *see* IAF, Tab 12 at 5, 9. The appellant asserts that, although AR 715-xx required the billing official to maintain original documentation for GPC purchases, an updated regulation governing GPC purchases did not include such a requirement. PFR File, Tab 1 at 4. He contends that because they relied on an outdated regulation in finding that the management controls over the GPC program at the Range Branch were unsatisfactory, the investigators provided the deciding official with incorrect information. *Id.*

¶9    We find this argument unpersuasive. The audit covered GPC transactions at the Range Branch from March 2011 through August 2012. IAF, Tab 7 at 32. As the administrative judge correctly noted, the appellant's certifications of 2010 and 2011 reflect that the regulation governing the GPC program at that time was AR 715-xx, and the updated GPC Standard Operating Procedure (SOP) was published on February 23, 2012. ID at 7 n.4 (citing IAF, Tab 8 at 61, 72;[1] IAF, Tab 18 at 56); IAF, Tab 17 at 39. Given the time period covered by the audit, we find that the agency investigators appropriately relied on both the agency's GPC SOP dated February 23, 2012, and AR 715-xx in evaluating the GPC program at the Range Branch. IAF, Tab 7 at 32.

¶10    The appellant also argues on review that once he learned of "accountability issues" in the DPTMS, he immediately took actions to remedy them. PFR File, Tab 1 at 4. As the administrative judge found, however, the appellant failed to implement adequate controls to prevent issues from arising in the first place and the weaknesses were material. ID at 15, 25-26, 30-32. In sum, we have considered the appellant's arguments set forth above, and we find that he has not

[1] The administrative judge inadvertently cited to page 73 instead of page 72.

set forth a basis to disturb the administrative judge's well-reasoned findings regarding the charge. *See Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 106 (1997) (finding no reason to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions); *Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987) (same).

The agency proved by clear and convincing evidence that it would have taken the same action in the absence of the appellant's protected disclosure.

¶11      In an adverse action appeal such as this, an appellant's claim of whistleblower reprisal is treated as an affirmative defense. *Shannon v. Department of Veterans Affairs*, 121 M.S.P.R. 221, ¶ 21 (2014); *Shibuya v. Department of Agriculture*, 119 M.S.P.R. 537, ¶ 19 (2013). In such instances, once the agency proves its adverse action case by a preponderance of the evidence, the appellant must show by preponderant evidence that he engaged in whistleblowing activity by making a protected disclosure under 5 U.S.C. § 2302(b)(8) and that the disclosure was a contributing factor in the agency's personnel action. *Shannon*, 121 M.S.P.R. 221, ¶ 21; *Shibuya*, 119 M.S.P.R. 537, ¶ 19; 5 C.F.R. § 1201.56(b)(2)(i)(C).

¶12      If an appellant meets this burden, the burden shifts to the agency to establish by clear and convincing evidence that it would have taken the same action in the absence of the protected disclosure. *Shannon*, 121 M.S.P.R. 221, ¶ 22; 5 C.F.R. § 1209.4(d). In determining whether the agency has met this burden, the Board will consider the following factors:  (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers, but who are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). The Board does not view these factors as discrete elements, each of which the agency must prove

by clear and convincing evidence, but rather, the Board will weigh the factors together to determine whether the evidence is clear and convincing as a whole. *Phillips v. Department of Transportation*, 113 M.S.P.R. 73, ¶ 11 (2010). Our reviewing court has added that "[e]vidence only clearly and convincingly supports a conclusion when it does so in the aggregate considering all the pertinent evidence in the record, and despite the evidence that fairly detracts from that conclusion." *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012); *Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶ 27 (2015).

¶13    The administrative judge found that the appellant proved that he made a protected disclosure and that this disclosure was a contributing factor in the agency's decision to demote him.[2] ID at 34. The administrative judge further found, however, that the agency proved by clear and convincing evidence that it would have taken the same action in the absence of the appellant's disclosure. ID at 35.

¶14    Although the appellant does not raise this issue on review, the administrative judge did not explicitly address each of the *Carr* factors in making her clear and convincing assessment. ID 34-35. Instead, she focused on the second *Carr* factor, i.e., the existence and strength of any motive to retaliate on the part of the agency officials involved in the decision. The administrative judge found that the proposing and deciding officials credibly testified that they had no motive to retaliate against the appellant based on his whistleblowing. ID at 35. In making this finding, the administrative judge noted that the deciding official stated that the misconduct that was the subject of the appellant's disclosure occurred before he took command of the garrison, thus implying that he was not directly implicated by the appellant's disclosures. ID at 34; *see* PFR File, Tab 7,

---

[2] The agency has not filed a cross petition for review challenging these findings, and we discern no reason to disturb them.

Hearing Transcript (HT) at 134-35 (testimony of deciding official).[3] The appellant does not challenge the administrative judge's assessment of the proposing and agency officials' motive to retaliate, and we discern no reason to disturb this portion of the initial decision. However, because the administrative judge did not make any findings regarding the other two *Carr* factors in her clear and convincing assessment, we find it appropriate to supplement her analysis by addressing the other two factors.

*The agency's evidence in support of its action is strong.*

¶15     The record evidence shows that the agency had strong reasons for disciplining the appellant, as there was significant evidence to support the charge and the consequences of the appellant's negligence were very serious. As discussed above, the results of both the agency audit and the AR 15-6 investigation showed that the appellant failed to perform his duties of ensuring that management controls were in place to prevent misuse of the GPC program and theft of Government property. The proposing official testified that the investigation showed that there were systemic long-term issues with internal controls relating to property accountability and the GPC program, HT at 21 (testimony of the proposing official), and he stated that the appellant failed to ensure that Range Branch personnel were aware of the requirements governing property accountability and were following them, HT at 42 (testimony of the proposing official).

¶16     In addition, the deciding official testified that the results of the agency audit were "alarming" and demonstrated a "complete failure" of management controls for the GPC program at the Range Branch. HT at 97 (testimony of the

---

[3] The hearing transcript is included as part of the agency response to the petition for review, but our citations to the hearing transcript will be to the separately paginated hearing transcript and not the pagination of the entire response.

deciding official). He also testified that the AR 15-6 investigation "documented a number of abuses, likely criminal activity, pilferage, theft, fraud, waste, and abuse in the [GPC program], and rampant [leadership] failures at all echelons, including [the appellant] as the Director of DPTMS." HT at 98 (testimony of the deciding official). He further noted that both the agency audit and the AR 15-6 investigation illustrated that the appellant had not made any efforts to rectify weaknesses and ensure that procedures were in place to prevent them from recurring. HT at 112 (testimony of the deciding official). The deciding official explained that he imposed the demotion because the investigation revealed that the problems at the Range Branch were caused, in part, by the appellant's inaction and lack of oversight. HT at 124 (testimony of the deciding official). In sum, based on our review of the record, we find that the evidence in support of the appellant's demotion is very strong.

> *The record does not reveal whether there are any employees who are not whistleblowers, but who are otherwise similarly situated to the appellant.*

¶17    The agency did not present any evidence showing that it took similar actions against employees who were not whistleblowers, but who were otherwise similarly situated to the appellant. *See generally* IAF, Tabs 36-38 (agency's response to the administrative judge's affirmative defense order); HT. The appellant argues on review that there were property accountability issues in three other directorates; however, he was the only director who was removed from his position. PFR File, Tab 1 at 5. In support of this argument, the appellant notes that the Logistics Management Specialist who conducted Command Supply Discipline Program (CSDP) evaluations at Fort Bliss testified that other directorates also had accountability issues but the agency did not take any action against their directors. PFR File, Tab 8 at 3 (citing HT at 189) (testimony of the Logistics Management Specialist). The appellant further notes that the proposing

official, who is the Director of the agency's Directorate of Family, Morale, Welfare, and Recreation (DFMWR) at Fort Bliss,[4] testified that there had been property accountability issues at DFMWR but no action was taken against him. *Id.* (citing HT at 67-70) (testimony of the proposing official).

¶18    As the proposing official explained, however, once he became aware of property accountability issues in his directorate, he addressed them immediately, whereas the appellant did not. Specifically, the proposing official testified that when an inventory of DFMWR revealed that a number of items were missing, he began implementing safeguards within 30 days to ensure that property accountability issues would not recur. HT at 39-40, 69 (testimony of the proposing official). By contrast, the record evidence demonstrates that the appellant did not adequately address the property accountability issues in DPTMS once he became aware of them. For example, a May 2011 evaluation showed that DPTMS was unsatisfactory in 6 of 9 areas and made recommendations for improvement; however, a follow-up evaluation conducted in July and August of 2011 indicated that the primary recommendation had not been implemented. IAF, Tab 23 at 20-23; *see* HT at 33-34 (testimony of the proposing official). In addition, as previously noted, the deciding official testified that both the agency audit and the AR 15-6 investigation illustrated that the appellant had not made any efforts to rectify weaknesses and ensure that procedures were put in place to prevent them from recurring. HT at 112 (testimony of the deciding official). Given these circumstances, we find that the proposing official is not a valid comparator employee for purposes of the appellant's whistleblowing retaliation claim.

---

[4] At the time of the appellant's proposed removal, the proposing official was serving a detail as Deputy to the Garrison Commander. HT at 15-16 (testimony of the proposing official).

¶19    In his petition for review, the appellant does not identify the other two directors (other than the proposing official), who he asserts were not disciplined for accountability issues, but he refers to the testimony of the Logistics Management Specialist, who identified the other directorates in his hearing testimony. PFR File, Tab 8 at 3; HT at 188-89 (testimony of the Logistics Management Specialist). At no point, however, does the appellant describe the specific circumstances surrounding the accountability issues in those other directorates. The agency does not do so either. Thus, it is not possible, based on the evidence presented, to determine whether the directors who were not whistleblowers engaged in similar misconduct and were not disciplined, or if they were not similarly situated to the appellant because their misconduct was not as serious.

¶20    In *Whitmore*, our reviewing court determined that "*Carr* does not impose an affirmative burden on the agency to produce evidence with respect to each and every one of the three *Carr* factors to weigh them each individually in the agency's favor." *Whitemore*, 680 F.3d at 1374. Rather, "the absence of any evidence relating to *Carr* factor three can effectively remove that factor from the analysis." *Id.*; *see Runstrom v. Department of Veterans Affairs*, 123 M.S.P.R. 169, ¶ 18 (2016) (finding that, due to lack of evidence that there were any employees similarly situated to the appellant, the third *Carr* factor was not significant for the analysis of that case). This is the situation presented in the instant matter. Accordingly, we find that the third *Carr* factor is insignificant due to the lack of evidence regarding similarly situated employees.

¶21    Weighing the three *Carr* factors together, we find that, given the strength of the agency's evidence regarding its reason for demoting the appellant and the absence of a motive to retaliate on the part of the proposing and deciding officials, the agency demonstrated by clear and convincing evidence that it would have demoted the appellant even absent his protected disclosure. We therefore

agree with the administrative judge's determination that the appellant failed to prove his whistleblower reprisal claim.

<u>The administrative judge complied with the guidance in *Whitmore* regarding the clear and convincing evidence issue.</u>

¶22    In reviewing this case, we also have considered the guidance in *Whitmore* regarding how the Board should analyze the evidence in addressing a whistleblowing claim.  As noted above, our reviewing court has stated that a proper analysis of the clear and convincing evidence issue requires that the Board evaluate all of the pertinent evidence in determining whether an agency has met its clear and convincing burden.  *Whitmore*, 680 F.3d at 1368.  In *Whitmore*, the court found that, in analyzing whether the agency met this burden, the Board excluded or ignored evidence offered by the appellant that was necessary to adjudicate his whistleblower reprisal claim.  *Id.* at 1368-72.  In particular, the court found that the administrative judge in that case abused her discretion by excluding certain of the appellant's requested witnesses, thereby admitting only testimony on the charges brought against the appellant and excluding witnesses offered to support his affirmative defense of whistleblower reprisal. *Id*. at 1368-70.  The court held that the administrative judge "treated the hearing as if it only functioned to examine the proof of the charges and the reasonableness of the penalty—not Whitmore's whistleblower defense."  *Id.* at 1363.

¶23    By contrast, the administrative judge in this case did not prevent the appellant from effectively presenting his whistleblowing defense.  Not only did the administrative judge approve all 14 of the appellant's requested witnesses, *compare* IAF, Tab 12 at 7-10, *with* IAF, Tab 33 at 2, but she also granted him an extension of time to submit a prehearing submission, which consisted of 20 separate parts and thousands of pages, some of which pertained to his whistleblowing reprisal claim, IAF, Tabs 12-31.  Most importantly, her thorough

initial decision shows that she closely listened to the testimony of witnesses from both sides, including those who bolstered the appellant's whistleblowing defense.

### The administrative judge correctly found that the agency established nexus and that demotion is a reasonable penalty.

¶24    In addition to the requirement that the agency prove its charge against the appellant, the agency also must prove that there is a nexus, i.e., a clear and direct relationship between the articulated grounds for the adverse action and either the appellant's ability to accomplish his duties satisfactorily or some other legitimate government interest.  *Ellis v. Department of Defense*, 114 M.S.P.R. 407, ¶ 8 (2010).  Here, the administrative judge found that nexus was established, *see* ID at 35, and we agree.  There is a presumption of a nexus where the misconduct occurred in part at work.  *Parker v. U.S. Postal Service*, 819 F.2d 1113, 1116 (Fed. Cir. 1987).  The appellant has not presented any argument to the contrary, and thus we see no reason to disturb the administrative judge's finding on nexus.

¶25    The Board will review an agency imposed penalty only to determine if the agency considered all the relevant factors and exercised management discretion within tolerable limits of reasonableness. *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981).  In making this determination, the Board must give due weight to the agency's primary discretion in maintaining employee discipline and efficiency, recognizing that the Board's function is not to displace management's responsibility, but to ensure that managerial judgment has been properly exercised. *Ellis*, 114 M.S.P.R. 407, ¶ 11; *Douglas*, 5 M.S.P.R. at 306.  It is not the Board's role to decide what penalty it would impose, but, rather, to determine whether the penalty selected by the agency exceeds the maximum reasonable penalty. *Lewis v. General Services Administration*, 82 M.S.P.R. 259, ¶ 5 (1999).

¶26    The decision letter and the deciding official's hearing testimony show that he appropriately considered the relevant *Douglas* factors in deciding to demote the appellant.  IAF, Tab 1 at 11-13; HT at 111-21, 126 (testimony of the deciding

official). Specifically, he considered the seriousness of the appellant's misconduct and found that it was "quite serious" because the situation at the Range Branch was longstanding and pervasive and no action was taken to address it. HT at 112 (testimony of the deciding official). The deciding official also considered that the appellant's conduct had caused him to lose faith and confidence in the appellant's ability to serve as a director. HT at 115 (testimony of the deciding official). In addition, he considered the appellant's potential for rehabilitation and determined that the appellant could not function as a supervisor but could continue to serve in a nonsupervisory role. HT at 120-21 (testimony of the deciding official). The deciding official considered as mitigating factors the appellant's lengthy service (36 years), the statements he provided, his health, and his emotional state, and the deciding official testified that these factors caused him to mitigate the proposed removal penalty to a demotion. HT at 126 (testimony of the deciding official).

¶27         In assessing the reasonableness of the penalty, the administrative judge also considered the appellant's disparate penalty claim, noting that the appellant "complained that no other directors were demoted from their positions when there were problems within their directorates." ID at 36. The consistency of the penalty with those imposed upon other employees for the same or similar offenses is one of the factors to be considered under *Douglas* in determining the reasonableness of an agency-imposed penalty. *Douglas*, 5 M.S.P.R. at 305. To establish disparate penalties, the appellant must show that the charges and the circumstances surrounding the charged behavior are substantially similar to those in his comparator's case. *Voss v. U.S. Postal Service*, 119 M.S.P.R. 324, ¶ 6 (2013). Here, the administrative judge properly rejected the appellant's disparate penalty claim, noting that the appellant failed to identify any director whose directorate had similar problems. ID at 36.

¶28         Finally, the administrative judge considered as mitigating factors the appellant's length of service, his commitment to the agency and its mission, his

lack of any prior discipline, and the good records of other branches in DPTMS under his supervision, but found that the sustained charge was serious and militated against mitigating the penalty. Based on her review of the record, the administrative judge found that the deciding official properly exercised his discretion in determining that demotion was an appropriate penalty in this case and that the agency's selected penalty was not unreasonable. ID at 37. We see no reason to disturb this finding.

ORDER

¶29 This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

**NOTICE TO THE APPELLANT REGARDING<br>YOUR FURTHER REVIEW RIGHTS**

You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit.

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices under 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction to review this final decision. The court of appeals must receive your petition for review within 60 days after the date of this

order.  *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  You may choose to request review of the Board's decision in the U.S. Court of Appeals for the Federal Circuit or any other court of appeals of competent jurisdiction, but not both.  Once you choose to seek review in one court of appeals, you may be precluded from seeking review in any other court.

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right.  It is found in title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.  Additional information about other courts of appeals can be found at their respective websites, which can be accessed through http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:


_____
Jennifer Everling
Acting Clerk of the Board
Washington, D.C.