## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

MARITZA PITTORE,
        Appellant,

    v.

DEPARTMENT OF VETERANS
    AFFAIRS,
        Agency.

DOCKET NUMBER
DE-1221-21-0015-W-1

DATE: September 16, 2024

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Maritza Pittore</u>, Huntington, West Virginia, pro se.

<u>Anita Varma</u>, Esquire, Phoenix, Arizona, for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner recused himself and did not participate in the adjudication of this appeal.

### REMAND ORDER

The appellant has filed a petition for review of the initial decision in her individual right of action (IRA) appeal, which granted in part her request for corrective action. For the reasons discussed below, we GRANT the appellant's

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

petition for review. We AFFIRM the administrative judge's findings that the appellant engaged in protected activity with regard to her November 2019 communication with the Office of Inspector General (OIG), that this activity was a contributing factor in the agency's decision to lower her performance rating, and that the agency failed to prove by clear and convincing evidence that it would have taken such action in the absence of her whistleblowing activity. We MODIFY the initial decision to find that the appellant established that her 2018 participation in the investigation of the agency's OIG was a contributing factor in the agency's decision to issue her a letter of reprimand, but agree with the administrative judge's decision to deny corrective action because the agency proved by clear and convincing evidence that it would have issued the reprimand regardless of the appellant's OIG activity. Finally, we VACATE the administrative judge's finding that the Board does not have jurisdiction over the appellant's 5-day suspension in this IRA appeal and remand the case for further adjudication in accordance with this Remand Order.

## BACKGROUND

The appellant is employed as the Chief of the Health Administration Service (HAS) for the New Mexico Veterans Affairs Health Care System (NMVAHCS). Initial Appeal File (IAF), Tab 18 at 93. She filed a complaint with the Office of Special Counsel (OSC) asserting that she was retaliated against due to whistleblower activities. IAF, Tab 11 at 5-22. On August 14, 2020, OSC closed its file in the matter and informed the appellant of her right to seek corrective action from the Board. IAF, Tab 1 at 14-15. Thereafter, the appellant filed the instant IRA appeal with the Board. IAF, Tab 1. She alleged that she engaged in the following protected activities and made the following protected disclosures: (1) participating in the investigation of the agency's OIG of HAS in or around March 2018; (2) refusing to violate the Veterans Health Administration (VHA) Handbook by adopting the Information Technology (IT) official's

proposal to scan backlogged documents to a network drive; (3) signing an affidavit in another employee's equal employment opportunity (EEO) complaint; and (4) disclosing her concerns regarding the scanning issues to the OIG in November 2019.[2]  IAF, Tab 11 at 13-15, Tab 15 at 3.  She further alleged that in reprisal for her whistleblower activities, the Assistant Director issued her a letter of reprimand on December 14, 2018, and her first-line supervisor, the Associate Director, lowered her 2019 performance rating from excellent to fully successful and issued her a 5-day suspension on January 24, 2020. IAF, Tab 1 at 5, 11; Tab 11 at 14, 19; Tab 15 at 3.

The administrative judge found that the Board has jurisdiction over all of the appellant's claims except her 5-day suspension.  IAF, Tab 15 at 2-3. Specifically, he found that the appellant had elected to file a formal grievance of the suspension and was therefore precluded from challenging it in this IRA appeal, pursuant to 5 U.S.C. § 7121(g).  IAF, Tab 3 at 1, Tab 15 at 2.  The administrative judge issued an initial decision on the written record, granting in part the appellant's request for corrective action.  IAF, Tab 29, Initial Decision (ID).  In particular, he found that the appellant proved that her November 2019 OIG activity was protected activity, that this activity was a contributing factor in the agency's decision to lower her performance rating, and that the agency failed to establish by clear and convincing evidence that it would have taken this personnel action in the absence of her whistleblowing activity.  ID at 7, 13.

The administrative judge did not grant corrective action as it related to the letter of reprimand, finding that, while the appellant's 2018 OIG activity was

_____

[2] The appellant made a series of vague and confusing allegations in her OSC complaint, which the administrative judge synthesized into the above-stated protected activities and personnel actions and found Board jurisdiction over.  IAF, Tab 11 at 5-22, Tab 15 at 3.  The appellant was allowed 3 days to file any objections to the administrative judge's characterization of her claims.  IAF, Tab 15 at 1 n.1.  Not only did the appellant fail to file any objection as to his characterization of her claims or his jurisdictional findings while the matter was pending in front of the administrative judge, she has also raised no such objection on review.  Accordingly, we accept the administrative judge's characterization of her claims.

protected under 5 U.S.C. § 2302(b)(9), she failed to establish that any official involved in the personnel actions had knowledge of this activity, and thus, failed to prove that her protected activity was a contributing factor in the challenged personnel actions. ID at 4-5.

The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1. Therein, she argues that the administrative judge incorrectly concluded that the agency officials did not have knowledge of her March 2018 OIG activities, because, among other things, she briefed members of upper management, including the Assistant Director, regarding action plans and mitigation steps in response to the OIG's 2018 site visit, which included numerous references to HAS.[3] *Id.* at 4. The agency has filed a response in opposition to the appellant's petition for review. PFR File, Tab 3.

## DISCUSSION OF ARGUMENTS ON REVIEW

Under the Whistleblower Protection Enhancement Act of 2012, after the appellant makes a nonfrivolous allegation of jurisdiction, she must prove by preponderant evidence that (1) she made a protected disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D) and; (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016). If the appellant proves that her protected disclosure or activity was a contributing factor in a personnel action taken against her, the agency is given an opportunity to prove, by clear and convincing evidence, that it would have taken the same personnel action in the absence of the

---

[3] The appellant does not dispute any other findings made by the administrative judge. PFR File, Tab 1 at 4. As we find that the record supports the administrative judge's findings, we see no basis for disturbing them. *Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 106 (1997) (declining to disturb the administrative judge's findings where she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions); *Broughton v. Department of Health and Human Services*, 33 M.S.P.R. 357, 359 (1987) (same).

protected disclosure. *Id.*; 5 U.S.C. § 1221(e)(1)-(2). Corrective action may not be ordered if the agency meets its burden of clear and convincing evidence. 5 U.S.C. § 1221(e)(2).

We agree with the administrative judge's findings that the appellant established by preponderant evidence that she engaged in protected activity under 5 U.S.C. § 2302(b)(9)(C) when she disclosed information to the OIG in November 2019, that this activity was a contributing factor in the agency's decision to lower her performance rating, and that the agency failed to prove by clear and convincing evidence that it would have taken such action in the absence of her whistleblowing activity. ID at 7, 13. However, upon review of the record, we also find that the appellant proved by preponderant evidence that her 2018 OIG activity was a contributing factor to the agency's decision to issue her a letter of reprimand. Nevertheless, because we also find that the agency proved by clear and convincing evidence that it would have issued the reprimand regardless of the appellant's OIG activity, we ultimately agree with the administrative judge's decision to deny corrective action with respect to the letter of reprimand. Finally, we vacate the administrative judge's finding that the Board does not have jurisdiction over the appellant's 5-day suspension and remand this appeal for the administrative judge to determine if the appellant meets the definition of "supervisor" or "manager" in 5 U.S.C. § 7103(a)(10)-(11), which would exempt her from the election of remedies provisions at 5 U.S.C. § 7121(g). If that is so, the administrative judge should further adjudicate her claim that the 5-day suspension was retaliatory.

<u>The appellant established that her 2018 OIG activity was a contributing factor in the agency's decision to issue her a letter of reprimand.</u>

In the initial decision, the administrative judge stated that there was "nothing to demonstrate" that any official involved in the personnel actions knew of the appellant's 2018 OIG activity. ID at 5. Based on this conclusion, he found that the appellant failed to prove by preponderant evidence that the 2018 OIG

activity was a contributing factor to the personnel actions challenged. *Id*. Upon our review of the record, we disagree with this conclusion.

To prove that a disclosure was a contributing factor in a personnel action, the appellant only need demonstrate that the fact of, or the content of, the protected disclosure was one of the factors that tended to affect the personnel action in any way. *Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 18 (2015). The knowledge/timing test allows an employee to demonstrate that the disclosure was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official taking the personnel action knew of the disclosure and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Id*. Once the knowledge/timing test has been met, we must find that the appellant has shown that her whistleblowing was a contributing factor in the personnel action at issue, even if after a complete analysis of all of the evidence a reasonable factfinder could not conclude that the appellant's whistleblowing was a contributing factor in the personnel action. *Id*.

It appears that in 2018, the OIG was conducting an audit or investigation into alleged deficiencies in care and service at the NMVAHCS.[4] IAF, Tab 18 at 31. The appellant, as the Chief of HAS, provided the OIG with data as requested, and assisted in formulating action plans and solutions to address these issues. *Id*. at 4-8, 30-45, 72-77; PFR File, Tab 1 at 4. Members of upper management and leadership were a part of these discussions, which included individuals outside of the appellant's immediate chain of command, such as the

---

[4] The only protected activity or disclosure that occurred before the December 14, 2018 letter of reprimand was the appellant's 2018 disclosures to the OIG. IAF, Tab 11 at 13, 15; Tab 15 at 3. Thus, none of the other protected activities could have been a contributing factor in the letter of reprimand because they occurred after its issuance. *See Sherman v. Department of Homeland Security*, 122 M.S.P.R. 644, ¶ 8 (2015) (stating that a disclosure that occurs after the personnel action at issue was taken cannot be considered a contributing factor in that personnel action). Accordingly, we only examine whether the appellant's 2018 OIG activity was a contributing factor in the agency's decision to issue her a letter of reprimand.

Assistant Director.[5]  IAF, Tab 18 at 4, 37-45, 72-77; PFR File, Tab 1 at 4.  Thus, it appears that responding to the OIG's requests for data, and addressing the concerns noted by the OIG, was a collaborative effort between upper management.  IAF, Tab 18 at 37-45, 72-77; PFR File, Tab 1 at 4.  Therefore, we find that it is more likely than not that the Assistant Director, a member of upper management, was aware of the appellant's 2018 OIG activities prior to issuing the letter of reprimand. This finding is further bolstered by the absence of any evidence from the agency denying knowledge of the same activity.

Accordingly, we find that the appellant established the knowledge element of the knowledge/timing test by preponderant evidence.  We also find that the appellant established the timing element.  The Board has held that a personnel action taken within approximately 1 to 2 years of the appellant's protected disclosures satisfies the knowledge/timing test.  *Mastrullo*, 123 M.S.P.R. 110, ¶ 21.  The appellant was first contacted by the OIG in May 2018 but was involved with providing data and information after then, including in August 2018.[6]  IAF, Tab 18 at 31, 37-44.  In December 2018, the appellant received a letter of reprimand from the Assistant Director.[7]  IAF, Tab 28 at 4-7.  A period of 4 months undoubtedly satisfies the knowledge/timing test.  Accordingly, we find

---

[5] We rely on emails that, in part, were sent to a group chain in email entitled "ABQ BCHL LEADERSHIP."  IAF, Tab 18 at 37-44.  Although not specifically stated, we assume that the Assistant Director of NMVACHS would be part of this group.

[6] While the appellant has alleged that she first communicated with the OIG in March 2018, there is no evidence to support such communication in the record.  IAF, Tab 11 at 13.  However, the record does establish that the OIG contacted the appellant for an interview during their site visit in May 2018.  IAF, Tab 18 at 30-31.  In any event, regardless of when the appellant first communicated with the OIG, the record establishes that she did so prior to being issued a letter of reprimand.

[7] Because the administrative judge found that the appellant's 2019 OIG activity was a contributing factor in the agency's decision to lower her performance appraisal, there is no need to examine whether the 2018 OIG activity was also a contributing factor in this personnel action, as it has no impact on the outcome of this case.  ID at 7.

that she has established that her 2018 OIG activity was a contributing factor in issuing the letter of reprimand.[8]

The agency proved by clear and convincing evidence that it would have issued the letter of reprimand absent whistleblowing activity.

Once the appellant makes a prima facie showing of whistleblower reprisal, the burden shifts to the agency to prove by clear and convincing evidence that it would have taken the same personnel action in the absence of the protected disclosure. *Lu v. Department of Homeland Security*, 122 M.S.P.R. 335, ¶ 7 (2015). In determining whether an agency has shown by clear and convincing evidence that it would have taken the same personnel action in the absence of whistleblowing, the Board will consider the following factors: the strength of the agency's evidence in support of its action; the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence, but rather weighs these factors together to determine whether the evidence is clear and convincing as a whole. *Lu*, 122 M.S.P.R. 335, ¶ 7. The Board must consider all the evidence, including evidence that fairly detracts from the conclusion that the agency met its burden. *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012).

---

[8] While we acknowledge that the administrative judge erred in not examining other evidence to determine if the appellant met the contributing factor standard after he found that she did not meet the knowledge/timing test, because we conclude that the appellant actually did meet the knowledge/timing test, we need not address other evidence that might prove contributing factor. ID at 5; *see Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 15 (2012) (holding that if an administrative judge determines that an appellant has failed to satisfy the knowledge/timing test, he shall consider other evidence, such as evidence pertaining to the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing was personally directed at the official taking the action, or whether these individuals had a desire or motive to retaliate against the appellant).

We first look to the strength of the agency's evidence in issuing the letter of reprimand. *See Carr*, 185 F.3d at 1323. The reprimand was issued due to ineffective communication and favoritism on the part of the appellant. IAF, Tab 28 at 4-6. The letter was supported by testimony and evidence gathered during an Administrative Investigative Board (AIB) investigation. *Id*. Based upon the statements of 20 employees, the AIB concluded that HAS leadership, including the appellant, lacked communication and exhibited favoritism. *Id*. at 10-14, 17. The letter relied on these statements, and included numerous quotes from employees supporting the allegations contained therein. *Id*. at 4-6. Based on these facts, we find that the agency presented very strong evidence to support its decision to issue the appellant a letter of reprimand.

Regarding the second *Carr* factor, i.e., the existence and strength of the agency's motive to retaliate, we find that there is little evidence demonstrating a motive to retaliate. The appellant's 2018 OIG activities appear to have been part of a collaborative effort between leadership to address concerns raised by the OIG. IAF, Tab 18 at 4-8, 30-44, 72-77; PFR File, Tab 1 at 4. There is nothing that indicates that the appellant's OIG activities were unexpected or discouraged. Further, it does not appear that the nature of the information disclosed by the appellant was secretive, such that management would feel the need to punish the appellant for having disclosed this information. IAF, Tab 18 at 4-8, 30-44, 72-77; PFR File, Tab 1 at 4. Instead, it appears that the information disclosed by the appellant to the OIG was part of this collaborative process by leadership to address questions posed by the OIG and to improve the quality of services offered by NMVAHCS. IAF, Tab 18 at 4-8, 30-44, 72-77; PFR File, Tab 1 at 4. Thus, while we acknowledge that the issues plaguing the agency, which the OIG was investigating, were not particularly flattering to the agency, in light of the fact that the appellant was part of a management team addressing such concerns, we do not believe that her activities levied any additional criticisms that would establish that the other members of management, who were also involved in

providing the OIG with information regarding the same issues, would have had a motive to retaliate. *See Whitmore*, 680 F.3d at 1370 (noting that agency officials responsible for overall performance of the agency may be motivated to retaliate if criticism reflects on them in their capacities as managers and employees). Accordingly, we find that the agency would have little motive to retaliate based on the nature and circumstances of the appellant's 2018 OIG disclosures.

Regarding the third *Carr* factor, whether the agency treated similarly situated employees who were not whistleblowers the same, the agency has not presented any evidence on this point. Our reviewing court has observed that, when an agency fails to produce comparator evidence, the third *Carr* factor cannot weigh in favor of the agency. *Siler v. Environmental Protection Agency*, 908 F.3d 1291, 1299 (Fed. Cir. 2018). Considering the strength of the agency's evidence in support of the reprimand, coupled with a lack of any evidence of motive, we find that this factor is mostly neutral.

Weighing the factors against one another and on the whole with respect to the letter of reprimand, we find that the first factor warrants significant weight, particularly given the detailed narrative and the overwhelming evidence supporting the allegations contained within the letter. Furthermore, our finding that there is little-to-no evidence of motive gives further weight to the conclusion that the agency established by clear and convincing evidence that it would have issued the letter of reprimand absent the appellant's whistleblowing activities. Because the agency has met its burden of clear and convincing evidence,

corrective action as it relates to the letter of reprimand cannot be granted.[9] 5 U.S.C. § 1221(e)(2).

<u>We remand this appeal for the administrative judge to determine if the appellant is exempt from 5 U.S.C. § 7121(g) and, if so, to further adjudicate her claim that her 5-day suspension was retaliatory.</u>

Under the 1994 amendments to the Whistleblower Protection Act, an employee subjected to an action appealable to the Board who alleges that the contested action was taken in reprisal for whistleblowing may elect to pursue a remedy through only one of the following remedial processes: (1) an appeal to the Board under 5 U.S.C. § 7701; (2) a grievance filed under an applicable negotiated grievance procedure; or (3) a complaint seeking corrective action from OSC under 5 U.S.C. §§ 1211-1222. 5 U.S.C. § 7121(g); *Requena v. Department of Homeland Security*, 2022 MSPB 39, ¶ 7. Whichever remedy is sought first by an aggrieved employee is deemed an election of that procedure and precludes pursuing the matter in either of the other two fora. *Scalera v. Department of the Navy*, 102 M.S.P.R. 43, ¶ 9 (2006).

On review, the appellant does not challenge the administrative judge's finding that she made a prior binding election under 5 U.S.C. § 7121(g) to contest

---

[9] In the initial decision, the administrative judge analyzed the appellant's second whistleblowing activity, i.e., her refusal to accept the IT's scanning proposal, under 5 U.S.C. § 2302(b)(9)(D) and determined that, because the IT official never "ordered" her to take any action, the activity was not protected. ID at 5-6. The appellant does not dispute the administrative judge's findings, and we find that the record supports his conclusions. However, although the appellant claimed that she was retaliated against because she refused to violate the VHA Handbook, in her narrative, she argued several times that the IT's scanning plan was a potential threat to patient safety and a violation of the VHA Handbook. IAF, Tab 18 at 12-16. Therefore, we clarify that, to the extent that the appellant argued that her refusal was protected under 5 U.S.C. § 2302(b)(8), we find that her disclosure is not protected because the suggestion was never implemented; thus, any danger to patient safety was merely speculative in nature, and such disclosure did not evidence a violation of law, rule, or regulation because there is no evidence that such suggestion was adopted. *See Miller v. Department of Homeland Security*, 111 M.S.P.R. 312, ¶ 6 (2009) (disclosures regarding danger to the public must be both substantial and specific to be protected, and disclosure of speculative danger does not meet this test).

her 5-day suspension by filing a grievance and therefore, that the Board lacks jurisdiction over that personnel action in the instant IRA appeal. IAF, Tab 3 at 1, Tab 15 at 2. Nevertheless, the issue of Board jurisdiction is always before the Board and may be raised at any time. *See Stoglin v. Department of the Air Force*, 123 M.S.P.R. 163, ¶ 7 (2015), *aff'd per curiam*, 640 F. App'x 864 (Fed. Cir. 2016). After the administrative judge issued his initial decision, the Board issued its decision in *Requena*, 2022 MSPB 39, ¶ 11, in which it held that supervisors and management officials are excepted from the election of remedies provisions of 5 U.S.C. § 7121(g). In *Requena*, the Board explained that 5 U.S.C. § 7103(a)(2) narrowly defined "employee" as excluding a "supervisor" or "management official." *Id*. Because the election of remedies statute for "an aggrieved employee" falls within chapter 71, it is, therefore, subject to this narrower definition of "employee." *Id*.

Because the administrative judge did not have the benefit of this decision, he did not address whether the appellant met the definition of "supervisor" or "management official" and was, thus, not subject to the election of remedies limitations. For the reasons discussed below, we vacate his finding that the appellant is precluded from challenging her 5-day suspension in this IRA appeal and remand this appeal for the administrative judge to determine whether the appellant is subject to the election of remedies limitations.

Here, it is undisputed that the appellant's title was "Chief of HAS." IAF, Tab 17 at 14, Tab 19 at 59. Although her position description is not in the record, her performance evaluation indicates the appellant likely had managerial and supervisory duties. IAF, Tab 19 at 60. For example, her performance elements included "leading change" and "leading people," among others. *Id*. Additionally, the documentation surrounding the AIB investigation into alleged misconduct by "HAS leadership" specifically listed the appellant as a member of leadership who was being investigated. IAF, Tab 28 at 10, 15. These documents suggest that the appellant is a "supervisor" and "management official," as defined by 5 U.S.C.

§ 7103(a)(10)-(11), rather than an "employee," as defined by 5 U.S.C. § 7103(a)(2). If that is so, the appellant is not subject to the election of remedies provisions of 5 U.S.C. § 7121(g). However, the nature of the appellant's position as it relates to this statutory scheme was not argued below or on review. We therefore find it appropriate to remand this appeal for further proceedings. *Requena*, 2022 MSPB 39, ¶ 15.

On remand, the administrative judge should first give the parties an opportunity to present argument and evidence about the nature of the appellant's position. If the administrative judge determines that the appellant is a "supervisor or a management official," and not an "employee" for purposes of chapter 71, subject to the election of remedies provisions at 5 U.S.C. § 7121(g), he must then determine if the Board has jurisdiction over this appeal. If he so finds, the administrative judge should develop the record on and adjudicate the appellant's claim that her 5-day suspension was retaliation for her protected activities, including her 2018 OIG activity, her October 2019 participation in another employee's EEO complaint, and her November 2019 OIG activity. The administrative judge shall incorporate his findings by reference regarding the appellant's remaining claims, as modified here, into the remand initial decision.

**ORDER**

For the reasons discussed above, we remand this case to the Denver Field Office for further adjudication in accordance with this Remand Order.

FOR THE BOARD:                    *Gina K. Grippando*
                                 _____
                                 Gina K. Grippando
                                 Clerk of the Board

Washington, D.C.